James W. Morrell and Joan Morrell v. Commissioner.
Morrell v. Comm'r
Docket No. 1334-69.
United States Tax Court
T.C. Memo 1971-99; 1971 Tax Ct. Memo LEXIS 234; 30 T.C.M. (CCH) 393; T.C.M. (RIA) 71099; May 6, 1971, Filed. *234 The petitioner failed to file Federal income tax returns for the taxable years 1961 through 1964. In 1967 he pleaded guilty to the misdemeanor of willfully failing to file returns under sec. 7203, I.R.C. 1954. Held, on the facts presented the respondent has failed to carry his burden of proving that the petitioner had the specific intent to fraudulently evade the payment of tax; accordingly, imposition of additions to tax under sec. 6653(b), I.R.C. 1954 is not justified. Robert R. Carney, Norman A. Phillips and Ralph R. Bailey, 17th Fl., Standard Plaza, 1100 S.W. 6th Ave., Portland, Ore., for the petitioners. Stephen E. Silver, for the respondent. *235 STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: In his notice of deficiency respondent determined deficiencies, overassessments and additions to tax as follows: Section
Deficiency
[1] 6653(b) *236 or (Over-
Additions
Year
assessment)
to tax
1961
$ (66.27)
$ 761.36
1962
(29.48)
1,245.95
1963
5.76
1,262.89
1964
1,062.04
2,055.12 Deposits made to this account during the income tax filing periods in question were as follows: 395 Jan. 1, 1962
Jan. 1, 1963
Jan. 1, 1964
Jan. 1, 1965
to
to
to
to
April 11, 1962
April 15, 1963
April 15, 1964
April 15, 1965
Total available per deposit tickets
$8,045.83
$5,319.00
$4,550.00
$11,621.74
Cash withheld
(50.00)
(40.00)
(18.33)
Withheld as loan payments
Less cash - deposited to pet. Joan Morrell's account
(1,350.00)
Deposited to Acct. No. 57-802 $8,045.83
$5,269.00
$3,160.00
$11,603.41 During 1961 through 1964 a substantial part of the petitioners' gross income was spent for personal, living expenses. On April 15, 1962, petitioners had an equity of approximately $10,000 in their personal residence. Petitioners' equity increased in the residence after this date by approximately $900 per year. In March 1965, Morrell contracted to have the second story of his home remodeled. *237 The remodeling was completed prior to July 2, 1965. Petitioners paid the contractor $2,534.25 on April 12, 1965 and the balance of $285.80 on July 2, 1965. On March 30, 1965, petitioners refinanced their home at 2649 S. W. Talbot Road in the amount of $9,500. Petitioners received a check in the amount of $3,002 as the net proceeds after the cost of refinancing. Part of the proceeds was used to pay the contractor for remodeling. On May 31, 1962, petitioners purchased a new automobile costing $3,274.92. Petitioners made a $500 down payment on June 1, 1962. The $500 down payment came from Morrell's drawing account. A retail installment contract with a beginning balance of $2,922 which was to be paid in 30 monthly installments of $97.40 was executed by petitioners. The loan was paid off on January 18, 1965. The loan was secured by the automobile. In January of 1961 Morrell obtained a loan of $1,500 from the United States National Bank of Portland. The loan was represented by a guaranteed note signed by Morrell's wife. On January 25, 1962, Morrell borrowed money in the amounts of $1,100 and $2,400 from the Equitable Savings and Loan Association. These loans were secured by the account *238 of Morrell's father with the savings and loan association. In 1963, Morrell borrowed $1,400 from Miss Sidney Blitz. This was a non-interest bearing loan. It was repaid by the petitioner in 1965. On June 12, 1963, Morrell borrowed $3,420.83 from the Equitable Savings and Loan Association. This loan was also secured by his father's account. Throughout the years in question Morrell borrowed from $100 to $700 at a time on an unsecured, short-term basis from the United States National Bank of Portland. Petitioners filed their Federal income tax return for 1959 on July 8, 1960, and their 1960 return on January 25, 1962. The petitioners had been granted an extension of the time for filing their 1960 return to June 15, 1961. Since the return was not filed until January 25, 1962, the 25 percent delinquency penalty was assessed. On April 12, 1962, petitioners were sent Form L-24 in connection with an unpaid balance of $163.45. This form stated, in essence, that unless payment was forthcoming the petitioners' property would be seized. On April 25, 1962, the petitioners were sent Form L-33 which requested them to confer with a revenue officer. On April 26, 1962, the petitioners paid $163.45; *239 the delinquency penalty was collected on April 30, 1962. An additional audit adjustment for self-employment tax and interest for the year 1960 resulted in additional tax of $216 which was assessed on December 7, 1962. On that date, petitioners were sent a notice of the additional assessment. After appropriate notice was given a levy was placed upon Morrell's bank account on April 29, 1963, but was released on May 3, 1963, after the tax and interest were paid. After Morrell filed the 1960 delinquent return, he was not contacted by the Intelligence Division concerning the reason why the 1960 return was not filed on time. During this entire period, Morrell did not disclose to any representative of the Internal Revenue Service his failure to file a 1961 return. From 1961 to 1964, the petitioners did not file declarations of estimated tax; Morrell knew that he was required to file declarations of estimated tax on a quarterly basis. Neither did the petitioners file timelyOregon State income tax returns for the years 1960 through 1964 even though Morrell knew they were required. These returns were filed on February 20, 1967 only after the State of Oregon sent a demand, dated January 31, 1967, for *240 petitioners to file. 396 For the taxable years prior to 1961 Morrell prepared his own tax returns. Although Morrell had prepared and executed petitioners' Federal income tax return for 1961 by April 15, 1962, he did not file. Neither did he file returns for 1962, 1963, and 1964 on the respective due dates. In January of 1965, Morrell completed petitioners' Federal income tax return for 1964. He had partially completed petitioners' Federal income tax return for 1963 by June of 1965 and he had collected all of the documents necessary for preparation of a return for 1962. It was Morrell's intention to prepare returns for the years in issue and take them to a certified public accountant that he was acquainted with. He was going to ask this accountant to review and then file the returns. Morrell estimated that he would have the returns filed in August of 1965. On June 22, 1965, at his law office, Morrell was interviewed by Special Agent Glenn R. Tellgren (hereinafter referred to as Tellgren). This was the first contact that the Internal Revenue Service had with Morrell concerning his failure to file income tax returns for the years 1961 through 1964. During the course of the *241 interview Morrell gave Tellgren completed 1961 and 1964 income tax returns. Morrell also gave Tellgren a partially completed 1963 income tax return. Morrell did not give Tellgren a 1962 income tax return because it had not been prepared. The income tax returns submitted to Tellgren on June 22, 1965, reported income and tax as follows: Taxable
Year
Income
Tax
1961
$ 6,604.09
$1,373.00
1963
15,936.77
1964
13,367.06
3,761.00 The tax shown as due and owing on the returns did not include the self-employment tax. The return for 1963 was only partially completed. It was not signed. The tax was not reflected on the 1963 return. Morrell prepared the delinquent returns for the taxable years 1961 and 1964 that were given to Tellgren on June 22, 1965. An accountant prepared the delinquent 1962 and fully completed 1963 income tax returns. On May 16, 1966, in the office of the Intelligence Division, Portland, Oregon, Morrell was interviewed by Tellgren and Albert Azorr, Jr., Group Supervisor. During the course of that interview, Morrell said that he failed to file the 1961 return due to lack of funds. Morrell said he failed to file the other returns because *242 he was afraid to disclose the fact of the non-filing of his 1961 return to the Internal Revenue Service. Morrell said that he was afraid to file the returns delinquent for fear he would face criminal prosecution for willful failure to file, and lose his position with his law firm and his status with the Oregon Bar. On August 22, 1966, in the Office of Regional Counsel, San Francisco, California, a conference was held to discuss Morrell's failure to file Federal income tax returns for the taxable years 1961 to 1964. At that conference, Morrell was present along with his attorney. Robert M. Zimmerman, attorney for the Regional Counsel; Simon C. Klass, technical advisor; and Dixon Howell, attorney trainee, were present for the United States. During the course of the conference, Morrell related that in early 1962, during the filing season for the 1961 return, he had prepared a 1961 income tax return but he did not have sufficient funds to pay the tax in full. Accordingly, he did not file the return. He knew as of April 15, 1962, that a return could have been filed without payment, but he did not consider this alternative acceptable, because he had been criticized by the senior partner *243 of his law firm for overdrawing his partnership account. He knew that if he had filed without making payment "it wasn't very long before the Internal Revenue Service contacted you and insisted upon payment." On the due dates of petitioners' income tax returns for the taxable years 1962, 1963, and 1964, petitioners had sufficient funds to pay the tax. At all times Morrell had been contacted by the Internal Revenue Service with respect to the taxable years 1961, 1962, 1963, and 1964 he was cooperative in supplying information. He made no inconsistent statements during the investigation. In 1967, Morrell pleaded guilty in United States District Court for the District of Oregon to the misdemeanor of willfully failing to file Federal income tax returns for the taxable years 1961 through 1964 in violation of section 7203, Internal Revenue Code of 1954. Opinion Section 6653(b) provides, in pertinent part: (b) Fraud. - If any part of any underpayment * * * is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * 397 The issue of fraud with intent to evade tax presents a factual question to be determined *244 upon consideration of the entire record. Anson Beaver, 55 T.C. 85, 92 (1970). Section 7454(a) imposes the burden of proof upon the respondent. "Fraud is never presumed. It must be affirmatively established by clear and convincing evidence." Anson Beaver, supra, at 92. The required quantum of proof may be satisfied by circumstantial evidence. Powell v. Granquist, 252 F. 2d 56, 61 (C.A. 9, 1958), affirming 146 F. Supp. 308 (D. Ore., 1956). The addition to tax for fraud may be imposed when the taxpayer has willfully attempted to evade tax by a willful failure to file returns, as well as, when he has filed intentionally false returns. Stoltzfus v. United States, 398 F. 2d 1002 (C.A. 3, 1968), affirming 264 F. Supp. 824 (E.D. Pa., 1967); Anson Beaver, supra, at 93; Fred N. Acker, 26 T.C. 107 (1956). Willful failure to file a timely return does not in itself, without more, establish liability for additions to tax for fraud. Stoltzfus v. United States, supra; Cirillo v. Commissioner, 314 F. 2d 478, 482 (C.A. 3, 1963), reversing a Memorandum Opinion of this *245 Court; Jones v. Commissioner, 259 F. 2d 300 (C.A. 5, 1958), reversing 25 T.C. 1100 (1956). As the respondent, in his excellent brief, points out there is a division of opinion among the Courts of Appeal as to what the respondent must show, in addition to willful failure to file, in order to prove the requisite fraudulent intent. In Spies v. United States, 317 U.S. 492, 498 (1943), the Supreme Court enunciated the so-called "affirmative action test," requiring an independent act of misrepresentation or concealment, in distinguishing the misdemeanor of willful failure to file from the felony of attempted tax evasion. The Spies test was adopted by the Fifth and Eighth Circuits in civil tax fraud cases. Jones v. Commissioner, supra, and First Trust & Savings Bank v. United States, 206 F. 2d 97 (1953), reversing an unreported case sub nom Kraftmeyer v. United States ( S.D. Iowa, 1952, 52-1 USTC 9328, 44 A.F.T.R. 1119). The Third Circuit apparently did not choose to follow the strict view of the Spies case but, rather, in Cirillo v. Commissioner, supra, at 482 stated: To justify a fraud penalty *246 the circumstances surrounding the failure to file returns must strongly and unequivocally indicate an intention to avoid the payment of taxes. [2]
Subsequently, the Third Circuit adopted a so-called "affirmative indication test" which required an affirmative indication of the intent to evade tax, Stoltzfus v. United States, supra, at 1005, fn. 6 at 1005, as distinguished from an affirmative act. The Court of Appeals for the Ninth Circuit specifically refused to consider whether the Spies test "was a proper analogy to be applied to the civil penalties * * *." Powell v. Granquist, supra, at 59. Without engaging in semantics the court simply considered the taxpayer's failure to file along with other relevant facts in determining whether there was fraudulent intent to evade tax. Although we have not specifically rejected the *247 Spies test as applied to civil fraud we have on past occasions expressed approval of the approach followed in Powell v. Granouist, supra, e.g. Anson Beaver, supra: In any case we are bound in this instance to abide by the views of the Ninth Circuit by our decision in Jack E. Golsen, 54 T.C. 742 (1970), for an appeal of our decision herein would normally lie to that Court of Appeals. Although we have applied the law as stated in Powell v. Granquist, we find the instant case distinguishable on its facts. Here, Morrell was not "wilfully defiant" and "dedicated to a plan of nonpayment of taxes," he was not guilty of bad faith, intentional wrongdoing and a sinister motive. Powell v. Granquist, supra, at 60. The respondent has failed to establish by clear and convincing proof that any part of Morrell's deficiency was due to fraud with intent to evade tax. The facts were largely uncontested. In our Findings of Fact we were able to adopt, substantially unchanged, the respondent's requested findings. We note that petitioners admitted all but a few of these. However, even though we found the facts in accordance with the respondent's interpretation *248 we do not find that these facts constitute a sufficient quantum of proof of fraud. 398 Admittedly this is a close case. There are factors on both sides of the question. Morrell is a practicing attorney and had been an assistant United States Attorney at one time. In that capacity he had participated in the prosecution of several failure to file and attempted tax evasion cases. Morrell has at no time denied that he knew during the years in question that he had taxable income and was obligated to file returns. Although he knew that he could have sought an extension of the time to file and could have filed a return without paying the tax, he nevertheless failed to file his return for 1961. He did not want to file without payment for fear the Internal Revenue Service would contact him within a short time seeking payment. Morrell admitted that he did not file returns for 1962, 1963 and 1964 because he was afraid his failure to file for 1961 would be more quickly discovered. Other factors in the respondent's favor are that Morrell did not file estimated tax returns although he knew that he was required to do so and he failed to file State income tax returns for the years 1960 through *249 1964 until the State of Oregon made demand upon him. Finally, there is the fact that Morrell pleaded guilty to the misdemeanor of willful failure to file. On the other hand, the petitioners presented considerable evidence at trial indicating that Morrell, although admittedly guilty of willful failure to file, did not have the specific intent to evade tax. During all of the years in question Morrell intended ultimately to pay his taxes. Morrell had prepared the petitioners' income tax return for 1961 by April 15, 1962, however, he did not file it. He had been criticized by the senior partner of his law firm for overdrawing his partnership account and he was reluctant to withdraw the funds necessary to pay the tax. It was Morrell's intention to pay the tax when he had accumulated sufficient funds. Hence, his goal was not to attempt to escape tax but rather to delay its payment. Morrell admitted to representatives of the Internal Revenue Service that he failed to file returns for the years 1962, 1963 and 1964 because he was afraid that if he were to file these returns his defalcation for 1961 would be discovered. This attempt to conceal a failure to file in a prior year is certainly *250 susceptible of a conclusion of fraudulent intent. See Stoltzfus v. United States, supra, at 1005; Fred N. Acker, supra, at 113. Although the petitioner was caught in a web of his own making which required additional strands to support the whole tenuous structure, after carefully considering his painful testimony at trial and after observing his demeanor we were left with the distinct impression that it was constantly Morrell's greatest desire to pay his taxes and thereby extricate himself. A failing in judgment and character, without more, cannot be equated with an intent to defraud. There are several other factors which indicate the absence of fraudulent intent. During all of the years in question Morrell was aware that his law firm was filing partnership returns which indicated the income he derived from the practice of law. In addition it may be inferred from his legal experience that he was aware that he would ultimately be held liable for his failure to pay income tax. Although we are cognizant of the fact that knowing one will be apprehended is not a defense ( Fred N. Acker, supra, at 113) we are of the opinion that it is some evidence *251 of the petitioner's state of mind. Another point which influenced our decision in the petitioners' favor was that Morrell had begun to prepare his delinquent returns preparatory to filing prior to the time he was initially contacted by an Internal Revenue Service representative. We found Morrell's testimony, that he intended to file his delinquent returns and that he was in the process of preparing them for that purpose, credible. Furthermore, we found the testimony of the respondent's revenue agent impressive. Morrell was fully cooperative with the Internal Revenue Service beginning with Tellgren's first contact. His statements were consistent with the facts revealed by Tellgren's investigation. The petitioner made no attempt to conceal or mislead. See Powell v. Granquist, supra, at 59-60, where the Court of Appeals notes that "Powell made only a colorable attempt to cooperate with revenue accountants * * *." "[In] determining the existence of fraud, it is the state of mind of the taxpayer during the period in question with which we are concerned * * *." Powell v. Granquist, supra, at 61. In the instant case the respondent has failed to show by clear *252 and convincing evidence that Morrell had a fraudulent intent. The facts and circumstances presented by both parties 399 illustrate that Morrell was passively resistant rather than knowingly defiant. He may have been subject to a moral deficiency but he was not guilty of intentional wrongdoing. Decision will be entered under Rule 50. Footnotes
1. All references by section are to the Internal Revenue Code of 1954 unless otherwise stated. Due to concessions by the petitioners the sole issue for our decision is whether the respondent was erroneous in asserting an addition to tax under section 6653(b). Findings of Fact Some of the facts were stipulated. The stipulations together with the exhibits attached thereto are incorporated herein by this reference. The petitioners James W. Morrell (hereinafter referred to as Morrell) and Joan Morrell, husband and wife, resided in Portland, Oregon at the time they filed their petition herein. The petitioners filed tax returns under conditions and at the times set forth, infra. Morrell is an attorney, presently engaged in the practice of law in the State of Oregon. He was graduated from Northwestern College of Law in Portland, Oregon in 1950 with a Bachelor of Law Degree. He was admitted to the State Bar of Oregon in 1950. From 1950 until 1953, Morrell was employed as an attorney in Portland, Oregon by Donald A. Schafer. In early 1953 Morrell was appointed an assistant United States Attorney in the District of Oregon, and shortly thereafter became the first assistant. Morrell was with the United States Attorney's office until September, 1957. During the period of time Morrell was an assistant United States Attorney, he tried two attempted evasion of income tax cases and one willful failure to file case. He also actively participated in nine other criminal tax cases in which he either prepared and filed the information or presented the indictment to the Grand Jury. In eight of these nine cases, he was present when the taxpayers entered their guilty pleas. The following charged offenses were made in the informations or indictments: Aiding and assisting in the preparation of false income tax returns for others in one case; attempted tax evasion in two cases; willful failure to file Federal income tax returns in six cases, and making a false statement in one case. Morrell received the assistance of special agents in handling these cases. Besides the cases assigned to Morrell, he had personal knowledge of some of the criminal tax cases which were being handled by other assistant United States Attorneys. 394 After Morrell left the United States Attorney's office he joined the law firm of Tooze, Kerr, Tooze & Hill, in Portland, as an associate. During the years 1961 through 1964 Morrell was an active partner and trial attorney. The managing partner had occasion to discuss clients' tax matters with Morrell. At the end of each taxable year the law firm provided Morrell with an annual statement showing his distributive share of partnership profits. Morrell's distributive share of the law partnership income during the taxable years 1961 through 1964 was $11,846.62, $15,699.49, $15,951.89, and $22,543.21, respectively. The partnership duly filed its return which showed the share of partnership income earned by Morrell and Morrell received copies of these returns. Other records which Morrell needed to prepare his returns for the years 1961 through 1964 were readily available to him. Petitioner's gross income for 1961 through 1964 was $17,242.27, $24,816.34, $27,959.75, and $33,219.66, respectively. The petitioners received taxable income for these years in the amounts of $6,303.33, $10,320.02, $10,256.09 and $17,150.95, respectively. The tax due and owing for these years which includes self-employment tax, was $1,522.73, $2,491.89, $2,525.78 and $4,110.24, respectively. The charges to Morrell's partnership drawing account for the years 1961 through 1964 were as follows: 1961
1962
1963
1964
Checks or currency drawn
$12,840.41
$13,106.94
$14,330.75
$19,455.24
Other charges
388.45
510.69
713.90
881.36
Less credits (280.85)
(481.00)
(168.80)
(1,163.23)
Total amount drawn from partnership $12,948.01
$13,136.63
$14,875.85
$19,173.37 Morrell's withdrawals from the partnership by check or currency from January 1 to April 15, in 1962, 1963, and 1964 were $2,978.26, $3,947.60 and $4,948.38, respectively. These amounts did not include checks or currency drawn for reimbursement of expenses. The law partnership was dissolved on December 31, 1964. At that time, Morrell had a debit in his capital account of $1,202.74. However, after the dissolution, Morrell received some monies from the successor to the partnership. These payments were based upon fees received by the firm after the dissolution. These payments were made to Morrell in consideration of work performed by him on these cases prior to the dissolution. The amount of money received from the firm was not sufficient, however, to pay the cumulative unpaid income taxes and interest for the years 1961 through 1964. Deposits made to petitioners' joint checking account number X7-802Deposits made to petitioners' joint checking account number X7-802 at the Metropolitan Branch of the United States National Bank during the years 1961 through 1964 were as follows: 1961
1962
1963
1964
Total available per deposit tickets
$14,490.53
$19,466.63
$14,469.00
$17,794.25
Cash withheld
(290.00)
(225.80)
(195.00)
(145.00)
Withheld as loan payments
(407.02)
(253.00)
Less cash - deposited to pet. Joan Morrell's account
(3,900.00)
Total deposited to Acct. No. 57-802 $13,793.51
Morrell drew checks on this account transferring $3,450.00 in 1962 and $5,405.00 in 1963 to Mrs. Morrell's checking account. * $19,240.83
* $14,274.00
This total includes $200 that was transferred to this account from Mrs. Morrell's account.
**↩ $13,496.25
2. It is interesting to note that the Court in Cirillo v. Commissioner, 314 F. 2d 478, 482 (C.A. 3, 1963), reversing a Memorandum Opinion of this Court, cited Powell v. Granquist, 252 F. 2d 56 (C.A. 9, 1958), affirming 146 F. Supp. 308↩ (D. Ore., 1956) as authority in the above quoted passage.