ANSON BEAVER AND FRANCES F. BEAVER, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3561–67. Filed October 20, 1970.

*William H. Bowen* and *Jerry T. Light*, for the petitioners.
*J. C. Linge*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax for the taxable years 1956 through 1962 and additions to tax as follows:

| Year | Deficiency | Addition to tax under sec. 6653(b) |
|---|---|---|
| 1956 | $118. 48 | $122. 24 |
| 1957 | | 566. 81 |
| 1958 | 175. 00 | 1, 743. 38 |
| 1959 | 1, 249. 53 | 2, 408. 63 |
| 1960 | 1, 574. 31 | 3, 209. 48 |
| 1961 | 189. 03 | 2, 810. 63 |
| 1962 | 185. 38 | 3, 318. 36 |

The petitioners having conceded one issue, the issues remaining for decision are whether certain advances received by the petitioner Anson Beaver from his employer constituted taxable compensation or loans and whether any part of any underpayment of tax required to be shown on petitioners' returns for the taxable years 1956 through 1962 was due to fraud.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

The petitioners are husband and wife and at the time they filed their petition herein resided in Rogers, Ark. On December 9, 1963, they filed joint Federal income tax returns for the taxable years 1956 through 1962 with the district director of internal revenue, Little Rock, Ark., employing thereon the cash receipts and disbursements method of accounting. Inasmuch as Frances F. Beaver is a party hereto only because of having filed joint returns, Anson Beaver will hereinafter be referred to as the petitioner.

Petitioner was born on June 27, 1903, in Atlanta, Ga. During the years 1924 to 1928, he resided in Cuba where he was employed by the Electric Bond & Share Co. as an auditor. In 1928 he accepted employment in New York with a public accounting firm in order to gain the practical experience necessary to become a certified public accountant. He did not receive any formal college training in accounting, but took various extension and other courses in accounting. He successfully passed the required examination and in October 1933 received a certificate authorizing him to practice as a certified public accountant in the State of New York.

From 1933 until 1942 the petitioner was associated with various accounting firms in New York. In 1942 he accepted employment in New York as the treasurer and chief financial and accounting officer of Consolidated Railroads of Cuba. He remained in such position until 1950 during which time his salary increased from about $15,000 to $25,000 annually. In 1950 his employment with Consolidated Railroads of Cuba was terminated. Thereafter he carried on an accounting practice in New York. He subsequently moved to Bangor, Maine, to assume the management of a newspaper.

In November 1954, the petitioner and another accountant formed a partnership in Bangor, Maine, to carry on an accounting practice. Petitioner obtained a certificate which authorized him to practice as a certified public accountant in the State of Maine. In 1955 the petitioner was enrolled to practice before the Treasury Department of the United States and remained so enrolled during the year 1956 through 1960. In August 1955 the partnership was dissolved, after which petitioner continued to practice accounting in Bangor as a sole practitioner. In the course of such practice he engaged in a considerable amount of tax work which included preparing tax returns and handling tax matters at conferences with the Internal Revenue Service.

Petitioner continued in his accounting practice in Bangor until the latter part of December 1956. At that time he and his family (his wife and two daughters) moved to New Jersey where he and his brother formed a joint venture to engage in home-improvement work under an FHA program. To supplement his income, he also worked as an employee of an accounting firm located in Paterson, N.J.

In April 1958, the petitioner obtained employment with the Daisy Manufacturing Co. as vice president in charge of finance and comptroller, a position he retained beyond the years in question. At that time the Daisy Manufacturing Co., hereinafter referred to as Daisy, was in the process of relocating its facilities from Plymouth, Mich., to Rogers, Ark. Petitioner began his new employment in Plymouth and in June 1958 moved to Rogers. During the months of April and

May 1958, his family remained in New Jersey. Thereafter they stayed with relatives in North Carolina until the fall of 1958 at which time they rejoined the petitioner in Rogers. In late 1958, the petitioner's mother came to live with his family in Rogers. She was quite ill at that time and subsequently died in May 1959.

On April 29, 1958, Daisy paid the petitioner the full amount of salary he had earned to that point (namely, from April 21 to April 30), less withholding tax and other amounts withheld. The petitioner requested that the amount of his salary for May be advanced to him. Upon the authorization of Daisy's executive vice president this was done, the petitioner receiving on April 29 an amount equal to his May salary, less withholdings. On May 29, 1958, the petitioner received the amount of his agreed monthly salary, less withholdings. This amount was recorded on the payroll records of Daisy as advance salary for June 1958. From time to time further advances were made to the petitioner by Daisy upon his request and with the authorization of Daisy's executive vice president. At the times the advances were made it was the understanding of the parties that the petitioner would satisfy the advances by forgoing future salary payments. On some occasions the petitioner did forgo some salary payments, but this did not occur frequently enough to ever fully satisfy the advances. As a consequence, each salary check thereafter issued was treated on Daisy's payroll records as advance salary for a future period. As Daisy made further advances to petitioner, the length of time between the date of issuance of salary checks and the period to which they related continuously increased.

During the years 1958 through 1962 the petitioner received from Daisy his authorized salary and bonus as follows:

| Year | Salary | Bonus | Total |
|------|--------|-------|-------|
| 1958 | $9,764.16 | $6,000 | $15,764.16 |
| 1959 | 16,249.92 | 7,000 | 23,249.92 |
| 1960 | 22,500.00 | 2,000 | 24,500.00 |
| 1961 | 23,499.84 | 2,000 | 25,499.84 |
| 1962 | 25,000.00 | 2,000 | 27,000.00 |

During such years he also received net advances from Daisy as follows:

| Year | Advances | Year | Advances |
|------|----------|------|----------|
| 1958 | $583.34 | 1961 | $333.28 |
| 1959 | 3,062.46 | 1962 | 500.00 |
| 1960 | 3,854.20 | | 8,333.28 |

During the years 1958, 1959, and 1960 Daisy, in its books, treated the advances as an adjustment to its imprest payroll fund account. It did not record them as accounts receivable. During such years it treated

the advances as deductible salary expense for Federal income tax purposes and withheld Federal income taxes and F.I.C.A. taxes from such amounts. Sometime in 1961, pursuant to the recommendation of its accountants with respect to a secondary security offering, Daisy began treating the advances as an account receivable in various financial statements which it utilized for purposes of publication. It continued, however, to treat such advances as an adjustment to its imprest payroll fund account on its own books and records and continued to withhold Federal income taxes and F.I.C.A. taxes from such advances.

During the years 1958 through 1962 the petitioner did not execute any notes payable in favor of Daisy, nor did he repay any of the advances. About 1965 the petitioner ceased to be vice president and comptroller of Daisy and was thereafter retained by Daisy in a consulting capacity with annual compensation of $7,500 per year. In 1968 he began making monthly payments of $200 in repayment of the advances referred to above.

Throughout the period 1956 through 1962 the petitioner maintained a check register noting thereon various expenditures which he considered to be deductible items for tax purposes.

During the period 1956 through 1962 the petitioner had severe health problems. In September 1956, while residing in Bangor, he sustained an acute myocardial infarction. After resting at home for about 1 month he was allowed to resume work on a half-time basis and about 3 weeks later he was allowed to resume work on a full-time basis.

In January or February 1958, while residing in New Jersey, he contracted pneumonia and was required to rest at home.

In February 1959, after he had moved to Rogers, a diagnosis revealed that he had diabetes mellitus. From October 15, 1959, to October 20, 1959, he was hospitalized for acute hepatitis. From April 24, 1960, to May 4, 1960, he was in the hospital for moderately severe anginal syndrome. From February 3, 1961, to February 10, 1961, he was hospitalized for regulation of diabetes mellitus. During the years 1959 through 1962 he was required to take increasing amount of various medications.

During the years 1956 through 1962 petitioner's wife suffered from arthritis and poor hearing.

Petitioners did not file Federal income tax returns during the years 1957 through 1962. In November 1962, petitioner received a letter from the collection division of the Internal Revenue Service with respect to his delinquent return for the year 1960. Thereafter he was called by Revenue Officer Robert McCorkindale over the telephone. Petitioner, however, did not wish to discuss the matter over the telephone and no meeting with McCorkindale was arranged.

During the first half of 1963 Revenue Agent Wyley Davis was engaged in making an examination of Daisy's 1961 corporate income tax return. During the course of his examination he informed the petitioner that he wanted to examine the individual returns of Daisy's officers in connection with his examination of Daisy's return. On July 23, 1963, Davis examined retained copies of returns submitted by Daisy's officers. At that time the petitioner submitted to Davis a penciled draft of a 1961 return in such a manner that Davis was led to believe that it represented a retained copy of a return filed by petitioner for that year.

In March 1963, Revenue Officer Jack Case was given the assignment of investigating petitioner's delinquent return for the year 1960. In August 1963, Case attempted to contact the petitioner on several occasions. In September 1963, a meeting between the two was finally arranged, during the course of which petitioner requested that their conference be delayed until October 9, 1963, because of his wife's pending surgery. At the October 9, 1963, meeting petitioner disclosed to Case his failure to file returns for the years 1956 through 1962. He subsequently submitted returns for such years on December 9, 1963, at a meeting with special agents of the Internal Revenue Service.

On the returns filed by petitioner, adjusted gross income, taxable income, tax liability, and Federal taxes withheld by the employer were reported as follows:

| Year | Adjusted gross income | Taxable income | Tax liability | Federal taxes withheld |
|------|----------------------|----------------|---------------|------------------------|
| 1956 | $6,456.73 | | [1] $126.00 | |
| 1957 | 9,462.71 | $5,516.44 | 1,209.87 | $56.90 |
| 1958 | 17,372.56 | 13,972.56 | 3,311.77 | 2,037.10 |
| 1959 | 23,312.42 | 14,825.72 | 3,567.72 | 2,367.50 |
| 1960 | 24,500.00 | 18,719.52 | [2] 3,515.86 | 4,151.25 |
| 1961 | 25,506.22 | 20,400.61 | 5,432.23 | 3,870.00 |
| 1962 | 27,014.69 | 23,082.45 | 6,451.33 | 4,230.00 |

[1] Represents liability for self-employment taxes.
[2] A correct computation of tax on the taxable income reported in petitioners' 1960 return results in tax liability of $4,844.64.

During the years 1958 through 1962 the petitioner determined how much tax was to be withheld from his salary and bonuses. Tax in the amount of $600 was withheld from the $6,000 bonus he received in 1958. No tax was withheld from the bonuses he received during the years 1959 through 1962.

On the returns for the years 1958 through 1962 the amounts of advances received by petitioner from Daisy were not included in adjusted gross income or taxable income.

In the notice of deficiency the respondent determined that such advances represented additional compensation and made certain other adjustments. The following tabulation shows the tax liabilities for the years 1956 through 1962, as shown on the returns and as shown in the notice of deficiency:

| Year | Tax liability per return | Tax liability per notice of deficiency |
| --- | --- | --- |
| 1956 | $126.00 | $244.48 |
| 1957 | 1,209.87 | 1,133.62 |
| 1958 | 3,311.77 | 3,486.77 |
| 1959 | 3,567.72 | 4,817.25 |
| 1960 | 3,515.86 | 6,418.95 |
| 1961 | 5,432.23 | 5,621.26 |
| 1962 | 6,451.33 | 6,636.71 |

Petitioner knew that he was required to file Federal income tax returns for each of the years 1956 through 1962. During such years his wife was aware of his failure to file returns and urged him to file each year.

On March 23, 1965, a five-count information was filed in the District Court for the Eastern District of Arkansas wherein petitioner was charged with willful failure to file U.S. income tax returns for each of the taxable years 1958 through 1962 in violation of section 7203 of the Internal Revenue Code of 1954. On December 15, 1965, petitioner, upon the advice of counsel and medical authority, entered a plea of guilty to the fifth count of the information, wherein he was charged with willful failure to file a U.S. income tax return for the taxable year 1962. He was sentenced to pay a fine of $1,000 and the remaining four counts of the information were dismissed.

In the notice of deficiency the respondent determined that all or part of the underpayment of tax required to be shown on petitioners' return for each of the taxable years 1956 through 1962 was due to fraud.

Some part of the underpayment of tax required to be shown on petitioners' return for each of the taxable years 1956 through 1962 was due to fraud with intent to evade tax.

OPINION

The respondent determined, and contends, that the advances received by petitioner from Daisy during the taxable years 1958 through 1962 constituted advance payments of salary for services to be rendered in the future, and that they therefore constituted taxable income to him in the years received. The petitioner contends that the advances constituted loans, the proceeds from which do not constitute income.

In this connection the petitioner, on brief, contends that if, as he maintains, the parties intended the advances to constitute obligations requiring repayment, a debtor-creditor relationship was established and the advances constituted loans.

If the advances were loans, it is obvious that they did not constitute taxable income. On the other hard, if the advances were compensation for services, even though those services were to be performed in the future, they constituted taxable income in the years received. See sec. 61(a)(1), I.R.C. 1954, and *S. P. Freeling*, 7 B.T.A. 1238. In either case, the recipient of the funds incurs an obligation which requires satisfaction at some point in the future. In the case of a loan, satisfaction is to be made by making monetary repayment pursuant to the parties' agreement. In such case a debtor-creditor relationship is established at the outset. In the case of compensation for future services, satisfaction is to be made by actually performing such services. Only when such services are not rendered does there arise a debtor-creditor relationship requiring satisfaction by monetary repayment.

At the trial the petitioner called several witnesses, all of whom were credible, to testify with respect to the nature of the advances. They testified variously that the advances constituted loans, debt, advances against petitioner's salary, advance salary payments, and advances for future months' services. It is apparent that the witnesses did not comprehend the legal distinction between compensation for future services and loans.

The question whether a debtor-creditor relationship is created at the time an advance is received is a question of fact to be determined upon a consideration of all the evidence. An essential element is the intent of the recipient to make monetary repayment of the amount of the advance and the intent of the person advancing the funds to enforce such repayment. See *Irving D. Fisher*, 54 T.C. 905, and cases cited therein.

Here, at the time the advances were made, it was the understanding that the petitioner would satisfy them by foregoing salary payments for future periods. This clearly indicates that satisfaction was to be made by the rendition of services in the future. Thus, there was no debtor-creditor relationship created at the times the advances were made and therefore such advances did not constitute loans. Indeed, the advances were consistently treated as compensation for services. During the years 1958, 1959, and 1960 Daisy, on its books, treated the advances as adjustments to its imprest payroll fund account. During such years it treated the advances as deductible salary expense for Federal income tax purposes and withheld Federal taxes from the advances. Although at some time in 1961 Daisy transferred the advances to an account receivable account on various financial statements

which it utilized for purposes of publication, the petitioner testified that this adjustment "was strictly for registration statement purposes." Daisy continued, on its books, to treat the advances as adjustments to its imprest payroll fund account and continued to withhold Federal taxes from the advances. Petitioner was aware that the advances were so treated by Daisy, and apparently interposed no objection to such treatment. Finally, we note that the petitioner did not execute any notes in favor of Daisy and the record does not indicate that any provision was made for the payment of interest with respect to the advances.

The fact that the petitioner did not satisfy the advances in the manner initially contemplated and that at some time subsequent to the years in question his obligation was reduced to a monetary one under which he began making payments does not affect our conclusion that the advances constituted taxable income in the years received. The petitioner will be entitled to compensating adjustments in computing his tax liability for subsequent years in which such payments are made.

In view of the foregoing it is held that the respondent correctly determined that the advances constituted taxable income to petitioner in the years received.

There remains the issue as to whether petitioners are liable for additions to tax for fraud under section 6653 of the Internal Revenue Code of 1954.[1]

The issue of fraud is one of fact to be determined upon a consideration of the entire record. *William G. Stratton*, 54 T.C. 255, and cases cited therein. Under section 7454(a) of the Internal Revenue Code of 1954,[2] the burden of proof with respect to fraud is upon the respondent. Fraud is never presumed. It must be affirmatively established by clear and convincing evidence. *Carter* v. *Campbell*, (C.A. 5) 264 F. 2d 930; and *William G. Stratton, supra.*

It is well established that the addition to tax for fraud may be imposed where there has been a willful attempt to evade tax by means

---

[1] Sec. 6653 provides in part as follows :
SEC. 6653. FAILURE TO PAY TAX.
(b) FRAUD.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *
(c) DEFINITION OF UNDERPAYMENT.—For purposes of this section, the term "underpayment" means—
(1) INCOME, ESTATE, AND GIFT TAXES.—In the case of a tax to which section 6211 (relating to income, estate, and gift taxes) is applicable, a deficiency as defined in that section (except that for this purpose, the tax shown on a return referred to in section 6211(a) (1) (A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing), and

[2] Sec. 7454 of the Code provides in part as follows :
SEC. 7454. BURDEN OF PROOF IN FRAUD AND TRANSFEREE CASES.
(a) FRAUD.—In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate.

of a willful failure to file returns, as well as by means of filing intentionally false returns. Such a willful attempt to evade tax may be found from any conduct calculated to mislead or conceal. *Fred N. Acker*, 26 T.C. 107; *Charles F. Bennett*, 30 T.C. 114; *Albert Gemma*, 46 T.C. 821; *Powell* v. *Granquist*, (C.A. 9) 252 F. 2d 56; and *Stoltzfus* v. *United States*, (C.A. 3) 398 F. 2d 1002.

While willful failure to file does not in itself establish liability for additions to tax on account of fraud, such failure may properly be considered in connection with other facts in determining whether any deficiency or underpayment of tax is due to fraud. See *Stoltzfus* v. *United States, supra.*

Upon a careful consideration of the entire record, it is our conclusion that some part of the underpayment of tax required to be shown on each of petitioners' returns for the taxable years 1956 through 1962 was due to fraud with intent to evade tax, and we have so found as a fact.

The petitioner was, by virtue of his profession as a C.P.A. and by past experience, thoroughly aware of his responsibilities with regard to satisfying his Federal tax obligations. Yet he did not file any returns for the years 1956 through 1962 until December 9, 1963, which was after his delinquency was discovered by representatives of the respondent.

Although the petitioner cooperated fully with representatives of respondent after they had become aware in October 1963 of his failure to file returns, it is apparent to us that until that time he intended to conceal his failure to file returns and thereby conceal his tax liability. At a meeting in July 1963 with Revenue Agent Davis petitioner submitted a penciled draft of a 1961 return in such a manner that Davis was led to believe that petitioner had in fact filed such a return, whereas he had not. Furthermore, in subsequent conferences with representatives of the respondent he stated that a reason for his failure to file returns for taxable years subsequent to 1956 was his knowledge that the filing of such returns would disclose his prior failure to file. This indicates to us an intent on the part of the petitioner to fraudulently conceal, and thereby evade, his tax liability for the years in question. See *Stoltzfus* v. *United States, supra.*

The petitioner testified that throughout the years in question he was subject to pressures created by pressing financial conditions, the deteriorating state of his physical health, and matters of family concern such as the terminal illness of his mother and the poor health of his wife. He testified that he always intended to ultimately file returns for the years in question but that when the times came for filing returns any attempt to collect the necessary facts built up these pressures in him and generated a nervous condition which he found unbearable. We are not unsympathetic to the misfortunes that the petitioner

encountered during the years before us. However, we are not persuaded that the petitioner was, throughout the period in question, continuously in such a physical and emotional state as to render him incapable of preparing and filing the returns. Indeed, despite his misfortunes, he was able to make two moves to new locations to seek employment which was more beneficial to him and his family. The employment which he obtained with Daisy was a position of significant responsibility and one which, in view of his salary increases, he apparently performed competently. During most of the period before us petitioner's income consisted primarily of salary, and the evidence shows that he kept a check register throughout the years in question, noting thereon various expenditures which he considered to be deductible items for tax purposes. Thus, it would seem that, particularly for a man of his profession and ability, the preparation of the returns would have been relatively simple. Even if he was too ill to prepare the returns at the times for filing, which the record does not establish, he must have been aware of his right to request extensions of time for filing. However, the record does not indicate that he ever made such a request.

The petitioner also points out that a substantial part of his tax liability for each of the taxable years 1958 through 1962 was satisfied by the withholding of Federal taxes. In his testimony the petitioner conceded that he knew that withholding was not sufficient to satisfy his tax liability for the years subsequent to 1959, but testified that he thought that withholding was sufficient to satisfy substantially all his liability for the taxable years 1958 and 1959. However, a substantial amount of his liability, as shown on the returns ultimately filed for the years 1958 and 1959, was not satisfied by withholding, and we think that the petitioner, by virtue of his training and experience, must have been aware of such fact.

In view of the foregoing, we hold that the petitioners are liable for the additions to tax under section 6653(b) of the Code.

*Decision will be entered for the respondent.*