CHARLES D. FLOYD AND CYNTHIA P. FLOYD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Floyd v. Commissioner
Docket No. 2145-73.
United States Tax Court
T.C. Memo 1978-368; 1978 Tax Ct. Memo LEXIS 145; 37 T.C.M. (CCH) 1517; T.C.M. (RIA) 78368; September 14, 1978, Filed *145 Held, respondent failed to carry his burden of proving fraud on the prat of Charles Floyd for 1968 by clear and convincing evidence since he failed to establish Charles Floyd had any specific knowledge of the inaccuracy of records delivered to the return preparer. Lewis P. Terrell and Buford C. Terrell, for the petitioners. Douglas R. Fortney, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency and a section 6653(b) [1] addition to tax of $ 6,401.91 and $ 3,200.95, respectively, in petitioners' 1968 income tax. After concessions, the sole issue is whether any part of the underpayment of income tax for 1968 was due to fraud with intent to evade tax on the part of petitioner Charles D. Floyd. [2]
*146 FINDINGS OF FACT Some facts were stipulated and are found accordingly. Charles D. and Cynthia P. Floyd lived in Gaines County, Texas, when they filed their 1968 joint Federal income tax return and when they filed their petition in this case. In 1956, Charles D. Floyd graduated from the high school in Loop, Texas, which had an approximate enrollment of sixty students. Charles Floyd completed one bookkeeping course. From 1959 through 1961, he served in the military. Following his military discharge, Charles Floyd began farming cotton an peanuts. On February 14, 1964, Charles Floyd married Cynthia Pauline King. They have two children, Michael Shea, born March 11, 1966, and Toby, born April 19, 1969. Cynthia Floyd, who also graduated from the high school in Loop, Texas, attended Texas Tech University for two years where she majored in Secretarial Administration. She has never had a bookkeeping course. Mrs. Hill of Denver City, Texas, prepared petitioners' tax returns for the years 1962 to 1968, inclusive. Mrs. Hill, a bookkeeper since 1935, completed her college accounting at Druns Business College, Houston, Texas, in 1940 and began preparing tax returns in 1961. *147 Mrs. Hill requested petitioners to begin keeping records so that their tax returns would not have to be prepared from miscellaneous farm records and bank statements. Although Cynthia Floyd had no bookkeeping education or experience, Mrs. Hill attempted to teach her how to record each year's expenses, but not receipts, in a farm income and expense book. Cynthia Floyd had the sole responsibility for preparing the book; Charles Floyd never made an entry in a book for any year. For the years 1966 through 1968, Cynthia Floyd recorded as income farm receipts from deposit slips. If she had a question whether a particular deposit was income, she would consult Charles Floyd. He would advise her how much, if any, of the particular deposit was income. Petitioners and their son, Michael Shea, h1d checking accounts only at the First National Bank of Seagraves in the names of Douglas Floyd, Cynthia Floyd, and Shea Floyd. All income was deposited in these bank accounts. Cynthia Floyd stated that she often did not record the income on a monthly basis from the bank statements, but would record the entire year's income in December. In 1966, 1967, and 1968, Charles Floyd delivered the *148 farm income and expense books prepared by Cynthia Floyd to Mrs. Hill from which the latter prepared petitioners' income tax returns for those years. Charles Floyd furnished Mrs. Hill all the records she requested for these years. She chose not to request the bank statements from him, although they were available. She relied exclusively on the books prepared by Cynthia Floyd to prepare the tax returns. The gross income reported on the income tax returns for those years was taken, for the most part, from the figures recorded in the farm income and expense book for each year. After Mrs. Hill prepared a rough draft of petitioners' 1966 tax return using the 1966 book figures, she told Charles Floyd that there were no entries in the book reflecting cotton sales after mid-December 1966. Since cotton farmers normally sell cotton toward the end of December, she suggested that perhaps some cotton sales had not been recorded in the book. Charles Floyd then told her to add $ 10,000 to the 1966 farm income. Respondent determined that petitioners' gross income was understated by $ 64,743.38 and $ 19,003.49 for 1966 and 1967, respectively, and the parties agreed that petitioners' gross *149 income was understated by $ 11,314.49 for 1968. Although Charles Floyd admitted that some of the bank deposits were apparently not recorded in the farm income and expense book, he could offer no explanation for the omissions. Cynthia Floyd explained the unrecorded deposits by indicating that she simply never had time to prepare the books properly. On November 21, 1968, Bill Ellyson issued his $ 656.24 check to Shea Floyd. Charles Floyd requested Ellyson to make the check payable to his two and one-half year old son. It represented payment for Ellyson's use of Charles Floyd's equipment and employee in his peanut harvest. The $ 656.24 check was deposited in Shea Floyd's separate bank account but was neither recorded in petitioners' 1968 farm income and expense book nor included in their gross income for 1968. Charles Floyd was very proud of his son and gave him many gifts normally given to only older children. He also put about $ 200 a month in Shea's account so that he could pay Shea's life insurance from the account. On December 9, 1968, Charles Floyd deposited two income checks totalling $ 11,003.38 from the John King Peanut Company to his checking account. Cynthia Floyd *150 recorded only $ 8,377.73 from this amount in the 1968 farm income and expense book as income and this amount was included in petitioners' 1968 gross income. The $ 2,625.65 difference represents rent that Charles Floyd owed his father for growing peanuts on his father's land. On January 8, 1969, Charles Floyd paid his father $ 5,558.58 for, among other things, rent. Cynthia Floyd recorded the payment as rent expense and Mrs. Hill deducted it in 1969. The $ 5,558.58 payment included the $ 2,625.65 rent which petitioners had reduced their gross income by in 1968. During the taxable years 1966 through 1968, inclusive, petitioners reported gross farm income on their Federal income tax returns as follows: Year
Amount
1966
$ 97,828.48
1967
112,275.87
1968
100,563.13
Special Agent Cole, by use of the bank deposits method, determined petitioners' gross income from farming for those years as follows: Year
Gross Income
1966
$ 162,571.86
1967
131,279.36
1968
111,877.62
Respondent, in his statutory notice of deficiency, determined, among other things, that for the year 1968 petitoners had understated their gross income from farming and that *151 part of the underpayment in tax for 1968 was due to fraud on the part of Charles Floyd. OPINION We must decide whether any part of petitioners' underpayment of tax for 1968 was due to fraud on the part of Charles Floyd. Fraud, as used in section 6653(b), means actual, intentional wrongdoing. Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941); Stratton v. Commissioner,54 T.C. 255, 284 (1970). The intent required is a voluntary, intentional violation of a known legal duty; in this case, to evade a tax believed to be owing. United States v. Bishop,412 U.S. 346, 360 (1973); Kahr v. Commissioner,414 F. 2d 621, 627 (2d Cir. 1969); Mitchell v. Commissioner,supra;Stratton v. Commissioner,supra.Negligence, no matter how great, is not the equivalent of fraud. Fraud is not presumed; respondent has the burden of affirmatively establishing it by clear and convincing evidence. Sec. 7454(a); Beaver v. Commissioner,55 T.C. 85, 92 (1970); Rule 142(b), Tax Court Rules of Practice and Procedure. The existence of fraud is a factual question to be *152 determined on the basis of the entire record. Stratton v. Commissioner,supra.Since direct evidence of fraudulent intent is seldom available, its existence may be determined from the conduct of the taxpayer and the surrounding circumstances. Foster v. Commissioner,391 F. 2d 727, 733 (4th Cir. 1968). The Supreme Court has stated that "affirmative willful attempt may be inferred from * * * any conduct, the likely effect of which would be to mislead or conceal." Spies v. United States,317 U.S. 492, 499 (1943). Although fraud cannot be inferred from the mere understatement of income; consistent and substantial underreporting is evidence of fraud. Holland v. United States,348 U.S. 121, 139 (1954); Webb v. Commissioner,394 F. 2d 366, 378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. Respondent relies upon three factors to support his assertion of fraud for 1968. First, he relies upon understatements in income of $ 64,743.38, $ 19,003.49, and $ 11,314.49 for 1966, 1967, and 1968, respectively, to establish a consistent and substantial underreporting of income. He asserts that the *153 understatements resulted from Charles Floyd's submission of records to his return preparer which he knew omitted income; consequently, respondent suggests Charles Floyd knew the unrecorded income would not be reported in gross income. Second, respondent relies upon Charles Floyd's direction to Bill Ellyson to make a check for his services payable to his infant son, Shea Floyd. The $ 656.24 check was deposited in Shea's bank account and omitted from petitioners' 1968 income. Third, respondent relies upon the double benefit petitioners obtained from reducing their 1968 gross income by $ 2,625.65 for rent expense and then deducting the same amount again in 1969. Following a careful review of the entire record, we believe respondent has failed to carry his burden in establishing fraud on the part of Charles Floyd by clear and convincing evidence. In addressing respondent's first contention, we note that the consistent and substantial understatement of income for 1966, 1967, and 1968 is only evidence of fraud. It is not conclusive. Merritt v. Commissioner,301 F. 2d 484 487 (5th Cir. 1962). Respondent argues that when such a pattern is coupled with a showing that *154 Charles Floyd's records were incomplete and inaccurate, and that Charles Floyd did not supply his return preparer with all the data necessary for preparing a correct return, fraud should be found. We agree with respondent's premise but not his conclusion which must be based solely upon the record before us. Charles Floyd never withheld any information from Mrs. Hill, the return preparer. It was at her suggestion that farm income and expense books were prepared, but she had available for the asking all the other records of petitioners. The fact that she did not see fit to ask for them does not operate to increase the guilt of Charles Floyd. Charles Floyd testified that he knew nothing of tax return preparation and bookkeeping and that he relied exclusively upon his wife to prepare the books and Mrs. Hill to prepare the tax returns. Moreover, he never refused to supply Mrs. Hill any information she requested. We believe the fact that Cynthia Floyd prepared the books to be the critical point on this particular fraud assertion. For respondent to prevail, he must show that Charles Floyd knew that the 1968 farm income and expense book was inaccurate. If Charles Floyd merely delivered *155 records to Mrs. Hill which he believed to be correct, even though they were not, he may not be charged with any intentional wrongdoing amounting to fraud. The record clearly establishes that Cynthia Floyd had the exclusive responsibility to prepare the books for each year. The only time she consulted Charles Floyd was when she did not know whether a particular deposit was income. Respondent did not Charge Cynthia Floyd with fraud and he did not point to a single deposit which Charles Floyd c6assified as non-income which was later determined to be income. Charles Floyd never made a single entry in any book for any year. The omissions in income were explained by Cynthia Floyd as simply innocent errors due to her inexperience as a bookkeeper and her preoccupation with her duties as a wife and mother. The simple fact is that respondent relies upon knowingly inaccurate records to support fraud but does not convincingly establish that Charles Floyd knew which items were recorded or not recorded in the records. Presumably to cure this fatal error, respondent points to 1966 where Charles Floyd told Mrs. Hill to increase gross farm income by $ 10,000. We draw no negative inference *156 from this. Charles Floyd merely responded to Mrs. Hill's concern that the 1966 farm income and expense book may not have contained all the income from cotton sales. In response, Charles Floyd indicated she should increase gross income by $ 10,000. This merely shows that he was attempting to make certain he paid his taxes. Charles Floyd testified that he told her to add the $ 10,000 because he was afraid, after her question, that all the income had not been recorded in the 1966 book. He further testified that he wanted to be sure he paid all the tax he owed. Moreover, the 1967 and 1968 books reflect that the income was more carefully recorded than for 1966. In short, we are simply not convinced that Charles Floyd knew the 1968 farm income and expense book did not reflect the 1968 unreported gross income. Respondent relies upon two other indicia of fraud to establish fraudulent intent. The first is the $ 656.24 check for services from Bill Ellyson made payable to Shea Floyd at Charles Floyd's request. Bill Ellyson testified that making such checks out to children was not unusual. Charles Floyd's other financial arrangements with his son support this. For example, Charles *157 Floyd put $ 200 a month into Shea's account and then paid Shea's life insurance from this account. The omission of the item from income is a result of the innocent error of Cynthia Floyd. She, not Charles Floyd, prepared the income for the books from the deposit slips of all the bank accounts. Once again, we are not convinced that Charles Floyd was aware that the $ 656.24 was not recorded in the 1968 book when he delivered it to Mrs. Hill. Finally, respondent relies upon the double benefit petitioners obtained from a 1968 exclusion of rent from gross income and a 1969 deduction of the same rent. First, we think the circumstances of the double benefit are too complex to exclusively support a finding of fraudulent intent under the facts of this case. Moreover, as to the 1968 omission of $ 2,625.65 from gross income, we once again adhere to our conclusion that respondent has failed to convince us that Charles Floyd knew that amount was excluded from income in the 1968 farm income and expense book. Also, respondent has failed to convince us that Charles Floyd knew that the same amount was deducted by Cynthia Floyd in the 1969 book. Respondent has simply failed to convince us *158 that Charles Floyd had any specific knowledge of the inadequacy of the records he delivered to Mrs. Hill. Accordingly, we conclude that respondent has failed to carry his burden of proving fraud for 1968 by clear and convincing evidence. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Respondent conceded in his notice of deficiency that no part of the underpayment of income tax is due to fraud on the part of Cynthia P. Floyd.↩