NICHOLAS J. LOMANGINO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lomangino v. Commissioner
Docket No. 17489-80.
United States Tax Court
T.C. Memo 1987-322; 1987 Tax Ct. Memo LEXIS 322; 53 T.C.M. (CCH) 1270; T.C.M. (RIA) 87322; June 25, 1987. John R. Serpico, for the petitioner. Lewis R. Mandel and Kevin M. Flynn, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined that petitioner was subject to additions to tax under section 6653(b) [1] in the amounts of $2,822.00, $5,962.00 and $6,483.00 for the taxable years 1971, 1972 and 1973 respectively. The sole issue for decision is whether petitioner's conceded omission *323 of distributable income from a subchapter S corporation was due to fraud. FINDINGS OF FACT Some of the facts were stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Brooklyn, New York, at the time of filing his petition. Petitioner reported his income and deductions on the basis of cash receipts and disbursements. During the years in issue petitioner Nicholas Lomangino ("petitioner") was the president and sole shareholder of D&N Carting, Inc. ("D&N"), a business engaged in the collection of garbage and refuse from commercial customers in Brooklyn, New York. Petitioner had purchased the company in 1970. D&N was essentially a family business. Petitioner's wife and petitioner's son-in-law were employed by the corporation. For the years 1971, 1972 and 1973 D&N elected under section 1372 to be treated as an S corporation. D&N maintained a business checking account at Manufacturers Hanover Trust Company of New York, for the purposes of depositing receipts and paying expenses of the business. Petitioner also maintained a personal account at Manufacturers Hanover Trust. Customers *324 of D&N paid for services rendered by both cash and checks. The checks, made payable to D&N Carting, Inc., were mailed to 5908 21st Avenue, Brooklyn, New York 11204, the business address of the corporation as well as petitioner's residence. Some of the gross receipts were deposited into the company checking account. Petitioner also deposited a portion of the business receipts into his personal account. The receipts deposited into petitioner's personal account consisted of checks made payable to D&N from Esquire Radio and Electronics, the largest customer of D&N. The payments from Esquire totaled $6,305.98, $26,281.43 and $36,040.36 for the years 1971, 1972 and 1973, respectively. During the years in issue, petitioner retained Seymour Bellow as the accountant for D&N. Each month Bellow went to petitioner's residence to prepare the necessary financial records of D&N. Petitioner provided Bellow with the bank statements of D&N, and Bellow determined the gross sales of the business based on deposits made to that account. Petitioner maintained an accounts receivable ledger but did not inform Bellow of it, and Bellow did not review any other financial records of the company in arriving *325 at the gross sales figures. Petitioner did not notify Bellow that some business receipts were deposited into his personal account. Consequently, the gross sales of D&N as calculated by Bellow for the taxable years 1971, 1972 and 1973 did not include the amounts deposited into petitioner's account. At the end of each year, Bellow made up a trial balance and then prepared the Small Business Corporation returns for D&N for each of the years in issue. Bellow reviewed the corporate returns with petitioner and apprised him of his distributive share of D&N's income. Petitioner then prepared his own personal income tax returns for the years 1971, 1972 and 1973. Petitioner reported distributable income from D&N as follows: Year
Amount
1971
$7,126.13
1972
$6,221.11
1973
$7,589.50
In a letter dated January 15, 1974, revenue agent Mortimer Eber notified petitioner that respondent had commenced an audit of the 1972 income tax return of D&N. On various occasions between January 15, 1974 and June 12, 1974, Eber conferred with Bellow concerning the D&N audit. Bellow informed Eber that the bank deposits method had been used to calculate gross sales. Eber requested corroborative *326 documentation and/or invoices in support of the gross receipts figures for D&N. He was given the general ledger, the cash receipts and disbursements journals, and the bank statements upon which Bellow had relied. This information was insufficient to permit Eber to verify the gross sales to complete his audit. Furthermore, these records did not apprise Eber of the receipts from Esquire. On July 3, 1974, Eber was informed by attorney John R. Serpico that he had been retained to represent petitioner in the audit in lieu of Bellow. At a July 17, 1974 conference between Serpico and Eber, Serpico informed Eber that on May 22, 1974, petitioner had filed amended tax returns for himself and D&N for the taxable years 1971, 1972 and 1973. Eber was also shown the accounts receivable journal which had been maintained by petitioner. The amended returns of D&N included in gross sales the receipts from Esquire which petitioner had deposited in his personal account as well as certain cash payments which had been omitted from the original returns. The gross receipts of D&N as stated on the original and amended returns were as follows: 1971
1972
1973
Gross receipts as stated
on original return
$ 88,499.62
$ 94,302.15
$112,952.20
Gross receipts as stated
on amended return
$111,532.00
$133,412.00
$145,792.00
Understatement
$ 23,032.38
$ 39,109.85
$ 32,839.80
*327 The amended returns of petitioner included his distributable share of the previously omitted income of D&N. Accordingly, petitioner reported additional income of $18,101, $31,895 and $27,934 for 1971, 1972 and 1973, respectively. Petitioner's tax liability for each of the years in issue, as calculated on the original and amended returns, was as follows: 1971
1972
1973
Original return
$4,312.82
$ 4,940.35
$ 7,467.21
Amended return
$9,751.80
$16,352.82
$19,606.01
Petitioner is an attorney and a life insurance broker. For each of the years in issue, petitioner prepared his own individual income tax returns which included such items as Schedule C profits, capital gains, rental income and depreciation. On November 24, 1978, petitioner entered a plea of guilty to charges of willfully and knowingly failing to report the full amount of D&N's gross receipts as required by law on a Small Business Corporation Return (Form 1120S). (United States v. Nicholas J. Lomangino, Docket Number 78 CR 129 (E.D.N.Y. 1978)). OPINION The sole issue to be decided is whether petitioner's omission of a portion of his distributable income from a wholly-owned subchapter *328 S corporation for the taxable years 1971, 1972 and 1973 was fraudulent. Section 6653(b) imposes an addition to tax if any part of an underpayment of tax is due to fraud. Respondent bears the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b); Otsuki v. Comissioner,53 T.C. 96, 105 (1969). This burden is met if it is shown that the taxpayer intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert denied 393 U.S. 1020 (1969). The existence of fraud is a question of fact to be determined upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Since direct evidence of fraudulent intent is rarely available, however, fraud may be proved by circumstantial evidence and the reasonable inferences which may be drawn therefrom. Spies v. United States,317 U.S. 492, 499 (1943). *329 The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra at 105-106. Upon consideration of the entire record, for the reasons described below, we conclude that respondent has proven fraud by clear and convincing evidence for the years 1971 through 1973. Petitioner testified that he had no involvement in the operation of D&N, asserting that it was the sole responsibility of his son-in-law, Allen Benson. Petitioner explained that he held the stock merely as a means of protecting his daughter's interest in the event her marriage to Benson soured. Petitioner was not a credible witness, and there is simply no other evidence in the record to support a finding that he did not operate D&N. Petitioner used his own money to purchase the business and therefore had a substantial financial stake in the profitability of the company. He was the sole shareholder and served as president of the corporation. Furthermore, Bellow was hired by petitioner and dealt solely with petitioner in the course of his duties as the accountant for D&N. Additionally, petitioner *330 failed to call his son-in-law as a witness to corroborate his own testimony and offered no explanation for not producing Benson. Under such circumtances, we may properly infer that Benson's testimony would have been unfavorable to petitioner's case. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Pollack v. Commissioner,47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968). It is clear that Benson was involved in the operation of D&N, but his role was that of the truck driver, not the person who ran the business. Petitioner also asserted that he deposited the checks from Esquire into his personal account to reimburse himself for cash given to his son-in-law to pay expenses of D&N. This claim strains the credulity of the Court. Petitioner submitted no documentation of any additional expenses, nor did he explain why the checks were not cashed through the business bank account. Furthermore, we find it somewhat suspicious that only the checks from Esquire, the largest customer of D&N, were treated in this manner. Finally, petitioner claims that the *331 failure to include the receipts from Esquire in the income of D&N was due to an honest mistake. Petitioner asserts that he did not initially realize that those receipts had not been included in Bellow's calculations of gross sales and, upon discovering the error, filed amended returns to correct the mistake. Once again, the record fails to support this claim. Petitioner had discussed the accounting procedures with Bellow and knew gross sales were calculated based on an analysis of the bank records of deposits into the business account. Therefore, it would have been obvious to petitioner that Bellow would be unaware of any business receipts not deposited into that account. Accordingly, petitioner must have known that Bellow's gross sales figures did not include the amounts deposited into his personal account. We note further that petitioner's degree of cooperation with respondent's agent during the course of the audit was less than exemplary. He provided the agent with the company's accounts receivable journal only after repeated requests for corroborative evidence and after the agent had been led to believe that no such record existed. Additionally, petitioner filed amended *332 returns while the audit of D&N's 1972 return was ongoing and did not notify the agent of his action until almost two months later. This lack of cooperation is yet another indication of fraudulent intent. Grosshandler v. Commissioner,75 T.C. 1, 20 (1980). Petitioner is a knowledgeable businessman. In addition to his interest in D&N, petitioner is an attorney and operates a life insurance business. He kept the books and records of income and expenses for his buinesses and was well-aware of the requirements of reporting business receipts as income. It is clear to us that petitioner consistently underreported his income from D&N for the three yeas in issue which resulted in an underpayment of tax. Furthermore, petitioner failed to cooperate fully with the revenue agent and was less than candid in his testimony before this Court. In reviewing petitioner's entire course of conduct in this matter, we find that respondent has successfully established the requisite fraudulent intent. Accordingly, we find that petitioner is subject to additions to tax under section 6653(b) for the 1971, 1972 and 1973 taxable years. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩