T.C. Memo. 2002-70

UNITED STATES TAX COURT

ANTONIO ROSARIO AND JOYCE ROSARIO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1378-00.                      Filed March 26, 2002.

Robert J. Fedor, for petitioners.

Katherine Lee Kosar, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  Respondent determined a deficiency of
$90,454 in petitioners' Federal income tax for 1993.  The issues
for decision are whether $242,556 received by petitioner Antonio
Rosario from Jesse Holman Jones Hospital (the hospital) in 1993
is taxable income to him in 1993 and whether the period of
limitations expired for the 1993 taxable year.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.[1]  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in Marion, Ohio.

Petitioner Antonio Rosario (hereinafter, petitioner) is an orthopedic surgeon.  The hospital is located in Springfield, Tennessee.  To induce petitioner to practice in the Springfield area, petitioner and the hospital executed a Professional Practice Agreement (the practice agreement) on September 30, 1992.  The practice agreement provided, in part:

> Income Guarantee.  Hospital guarantees that, during the term of this Agreement, Physician's gross income (defined as collected professional fees) will not be less than Thirty-Three Thousand Three Hundred Thirty-Four Dollars ($33,334.00) per month.  To the extent that Physician's gross income in any month during the term of this Agreement is less than $33,334.00, the Hospital will pay Physician by the tenth day of the closing of the Physician's books for that month any amount sufficient to raise Physician's income for that month to $33,334.00 (such payment by Hospital, will be referred to as a "Gross Guarantee Payment").  If, during any month of the term of this Agreement, Physician's income is greater than $33,334.00, Physician will pay to Hospital by the tenth day after the closing of Physician's books for the month, the excess over $33,334.00, to the extent necessary to reimburse hospital for Gross Guarantee Payments previously paid.  Such payments by Physician will be made to the Hospital during the term of this

_____

[1]  All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

> Agreement until the total amount of Gross Guarantee Payments made by Hospital have been repaid in full.
> * * *

The practice agreement also provided that petitioner and the hospital would agree upon repayment terms at the termination of the agreement if there was any balance due.

In exchange "for the benefits and consideration provided by Hospital to Physician", petitioner agreed to operate a medical practice of orthopedic surgery in the area for a period of at least 3 years and to become a full member of the medical staff at the hospital. If petitioner failed to comply with the terms of the practice agreement, the practice agreement provided that, upon demand by the hospital, petitioner would repay all amounts paid to him to meet the income guarantee. The practice agreement term began on January 1, 1993, continued for a period of 12 months, and could be renewed for an additional 12 months by mutual consent. The practice agreement also provided that petitioner would be an independent contractor of the hospital.

Petitioner began operating a medical practice in Springfield, Tennessee, on September 30, 1992. Beginning in January 1993, petitioner received funds from the hospital to ensure a monthly gross income[2] of $33,334. During 1993, pursuant

---

[2] For convenience, we use the parties' terms "income" and "guarantee payments", and use of such terms is not intended to be conclusive as to characterization for tax purposes.

to the practice agreement, petitioner received $242,556 from the hospital.

On January 1, 1994, petitioner and the hospital executed a First Amendment to Professional Practice Agreement (amended agreement). The amended agreement provided:

> Hospital intended that Physician, upon expiration of the Income Guarantee, be required to repay that portion of the Income Guarantee not repaid pursuant to the Guarantee Payback, regardless of the level of Physician's gross income, * * *.

The amended agreement also stated:

> WHEREAS, Physician acknowledges that he, consistent with this intent, has accounted for amounts advanced by Hospital pursuant to the Income Guarantee as a loan and not as income.

In connection with the amended agreement, petitioner executed a promissory note on January 1, 1994, in the amount of $261,094. If petitioner ceased practicing in that area, the outstanding principal balance would be due and payable in full. After more than 6 years of practice in the area, petitioner ceased in November 1998.

Petitioner and the hospital discussed repayment of the promissory note balance by assigning to the hospital petitioner's accounts receivable from his practice. On March 2, 1999, the hospital wrote petitioner that the value of his accounts receivable had decreased substantially. The hospital then requested immediate payment of the outstanding balance of $110,780.

On July 20, 1999, the hospital filed a diversity complaint against petitioner in the U.S. District Court for the Middle District of Tennessee to recover the balance of the promissory note--$110,780 plus accrued interest from November 1998. This amount represented the funds advanced to petitioner from the hospital and not yet repaid under the practice agreement. The U.S. District Court granted summary judgment to the hospital and awarded it the outstanding balance on the note, accrued interest, and attorney's fees and expenses.

Respondent determined that petitioner received unreported taxable income of $242,556 from the hospital in 1993. Respondent determined that "the loan from Jesse Holman Jones Hospital does not constitute a valid loan".

Discussion

Petitioner argues that the guarantee payments advanced to him during 1993 constituted a loan. Petitioner argues that these payments were a loan because the transaction was at arm's length, a promissory note was executed which bore interest and required a balloon payment, each party intended to make or enforce repayment per repayment terms enumerated in the practice agreement, the hospital maintained a schedule of all payments and repayments, and the hospital would charge an interest rate as of the termination date of the practice agreement. In addition,

petitioner contends that the amended agreement and the hospital's proceedings against him in a U.S. District Court to collect repayment of the guarantee payments received by him should eliminate "any doubt regarding the treatment of the monies advanced".

Respondent argues that amounts paid to petitioner by the hospital constituted gross income in 1993. Respondent contends that nothing in the record evidences that, at the time petitioner entered into the practice agreement, petitioner intended to repay the guarantee payments received. Respondent also argues that the practice agreement did not contain an unconditional obligation to repay because it stated that any terms regarding the payback of a balance due would be mutually agreed upon at the expiration of the term.

Gross income includes all income from whatever source derived, encompassing all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion". Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Generally, proceeds of a loan do not constitute income to a borrower because the benefit is offset by an obligation to repay. United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967); Arlen v. Commissioner, 48 T.C. 640, 648 (1967). Whether a particular transaction actually constitutes a loan, however, is

to be determined upon consideration of all the facts.  Fisher v. Commissioner, 54 T.C. 905, 909 (1970).

For a payment to constitute a loan, at the time the payments are received, the recipient must intend to repay the amounts and the transferor must intend to enforce payment.  Haag v. Commissioner, 88 T.C. 604, 615 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); Beaver v. Commissioner, 55 T.C. 85, 91 (1970).  Further, the obligation to repay must be unconditional and not contingent on a future event.  United States v. Henderson, 375 F.2d 36, 39 (5th Cir. 1967); Bouchard v. Commissioner, 229 F.2d 703 (7th Cir. 1956), affg. T.C. Memo. 1954-243; Haag v. Commissioner, supra at 615.

Intent is a state of mind rarely susceptible of proof by direct evidence; therefore, we have generally considered a number of criteria for the purpose of determining the intent of the parties at the time the payments were made.  Dean v. Commissioner, 57 T.C. 32, 43 (1971).  No single factor, standing alone, is controlling, but each factor is considered with all the facts and circumstances present.  Id. at 44.

On the basis of the evidence in the record, we find that the guarantee payments advanced to petitioner constituted a loan and are not taxable income.

First, the practice agreement provided for repayment. The practice agreement provided that petitioner, to the extent his income during any month of the term of the agreement exceeded $33,334, had to repay the hospital for guarantee payments previously made by the 10th day after the close of petitioner's books for that month. Additionally, the practice agreement provided that the parties would agree upon terms for repayment of any balance due at the termination of the practice agreement. Furthermore, the practice agreement provided repayment terms in certain other instances, e.g., if control or ownership of the hospital was transferred or changed.[3]

---

[3] In such instances, the practice agreement provided for repayment "in twenty-four (24) monthly installments of principal and interest calculated at the prevailing prime rate of interest published in the Wall Street Journal as of the day of termination".

Additionally, the obligation to repay was shown in the provisions for the early termination of the practice agreement. If the hospital terminated the practice agreement early in certain instances, the practice agreement provided that petitioner "shall not be obligated to repay Hospital any amounts paid on behalf of or reimbursed to Physician by Hospital". We interpret this sentence as not requiring petitioner to repay the guarantee payments amounts if the hospital terminated the practice agreement early, and requiring petitioner to repay otherwise.

This point was emphasized in the next sentence, which provided that if the hospital terminated the practice agreement early in other instances (e.g., petitioner was convicted on a felony or petitioner did not comply with the terms of the practice agreement), petitioner "will repay to Hospital, upon demand by Hospital, all sums of monies paid out to Physician to meet the income guarantee".

Petitioner's intent to repay is further supported by the amended agreement and the accompanying promissory note. The amended agreement emphasized petitioner's obligation to repay the sums advanced to him as guarantee payments and called the guarantee payments a "loan". The amended agreement's purpose was to enforce repayment by requiring petitioner to execute the promissory note in the amount due--the excess of the amount of the guarantee payments made over the portion of those payments that petitioner had repaid to the hospital. As a result, petitioner executed the promissory note for the amount due to the hospital.

Further, petitioner's intent to repay was reflected in the correspondence between petitioner and the hospital after petitioner ended his practice in the Springfield area. The correspondence stated that petitioner proposed to assign his accounts receivable to pay off the remaining balance of the promissory note and then make arrangements to pay the outstanding balance. If petitioner had not intended to repay the balance of the promissory note, petitioner would not have made any arrangements with the hospital.

Additionally, the hospital's intent to enforce repayment by petitioner is reflected in other stipulated documents. For example, the parties stipulated journal entries titled "Jesse

Holman Jones Hospital Accounts Receivable--Other" under which is written petitioner's name. Upon review by the Court, they appear to be prepared contemporaneously with each transaction. The journal entries show amounts paid to or on behalf of petitioner and repayments to the account. The hospital reported the guarantee payments in the "debit" column. The hospital, therefore, treated each guarantee payment as an asset or account receivable; i.e., an amount that it would receive in the future. In addition, credits are shown in the journal entries, indicating that repayments were made to the account.

Finally, the hospital's intent to enforce repayment of the guarantee payments amount is demonstrated by the hospital's proceedings against petitioner in the U.S. District Court to collect on the promissory note. If the hospital had not intended to enforce repayment, the hospital would not have filed a lawsuit on the issue in the U.S. District Court based on diversity and then sought a summary judgment on the undisputed facts.

On the basis of the record, we conclude that the guarantee payments advanced to petitioner constituted a loan rather than taxable income because petitioner intended to repay the amounts paid to him and the hospital intended to enforce repayment of the guarantee payment amounts. We hold, therefore, that the

guarantee payments are not includable in petitioner's income in 1993 because those payments were a loan.

As we have found that petitioners are not liable for the deficiency, whether the period of limitations expired for the 1993 taxable year is moot.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not herein discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioners</u>.