T.C. Summary Opinion 2015-40

UNITED STATES TAX COURT

GEORGE LAWRENCE STARKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6151-13S.                    Filed July 7, 2015.

George Lawrence Starke, pro se.

<u>William J. Gregg</u>, <u>John D. Ellis</u>, and <u>Bartholomew Cirenza</u>, for respondent.

SUMMARY OPINION

BUCH, <u>Judge</u>:  This case was heard pursuant to section 7463 of the Internal

Revenue Code in effect when the petition was filed.[1]  Under section 7463(b), the

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule references are to the Tax
(continued...)

decision to be entered in this case is not reviewable by any other court, and this opinion may not be treated as precedent for any other case.

The issues before the Court are whether George Starke received nonemployee compensation in 2010 and whether he is liable for an accuracy-related penalty under section 6662(a). Because any amount Mr. Starke may have received as nonemployee compensation was taxable in a prior year, we hold that Mr. Starke is not liable for the deficiency determined by respondent or the accuracy-related penalty under section 6662(a).

## Background

During the 1970s and 1980s Mr. Starke was an offensive lineman in the National Football League, most notably with the Washington Redskins. After retiring from football, Mr. Starke opened a car dealership in Maryland. While running his car dealership, Mr. Starke observed that there was a shortage of qualified service technicians in the greater Washington, D.C., area. He also perceived that there was a problem with violence and poverty in the area. To address these problems, Mr. Starke established a school that would teach people in the community to become automotive service technicians.

---

[1](...continued)
Court Rules of Practice and Procedure.

In the late 1990s Mr. Starke sold his car dealership and cofounded the Excel Institute (Excel), a nonprofit corporation. Excel provided a two-year program that taught basic reading, writing, and arithmetic in addition to providing job counseling and technical training. The program was available free of charge to any persons who wanted to participate so long as they committed to the attendance requirements. Initially, Excel did not have any outside funding, and Mr. Starke taught many of the classes and largely funded it himself.

After Mr. Starke's original board chair passed away, Jack Lyon joined Excel as chair. Eventually, Mr. Lyon took over the day-to-day management of Excel, which created tension between him and Mr. Starke. As difficulties between Mr. Starke and Mr. Lyon grew, Mr. Starke's responsibilities shifted away from management and more into fundraising. In the late 2000s Mr. Starke learned of an investigation into Excel's fiscal management. Citing ethical concerns, Mr. Starke stopped fundraising for Excel.

During Mr. Starke's employment at Excel he was paid a salary plus a housing allowance. Mr. Starke also had access to an American Express card for Excel. Mr. Starke used the American Express card for both personal and Excel-related expenses, but he did not consistently provide receipts to Excel showing his expenses. According to one of Excel's accountants, during the year in issue if an

employee made a purchase on one of Excel's credit cards and the employee could not show that it was an expense benefiting Excel, Excel would treat the expense as an advance or prepaid expense on the employee's behalf.

Excel's general ledgers from 2003 to 2010 show various entries labeled advances or prepaid expenses that are attributable to Mr. Starke. All of Mr. Starke's advances and prepaid expenses occurred between 2003 and 2006. In contrast, the only entries from 2007 to 2010 are payroll deductions for Mr. Starke that offset the previous advances and prepaid expenses. Mr. Starke testified that he did not know why the amounts were being deducted, but he assumed it was related to taxes or healthcare expenses. Respondent introduced a 2005 letter from Excel's accountant to Mr. Lyon establishing a repayment plan, including payroll deductions, to recoup "salary advances to George Starke that have accumulated over the years." Mr. Starke stated that he never received a copy of this letter.

Mr. Starke's employment with Excel ended in 2010. Subsequently, Excel mailed Mr. Starke a 2010 Form 1099-MISC, Miscellaneous Income, reflecting $83,698.45. According to Excel's 2010 general ledger, this amount represented advances and prepaid expenses that Mr. Starke had not repaid when he left Excel. Mr. Starke received the Form 1099-MISC but did not include the amount in his income when he filed his 2010 Form 1040, U.S. Individual Income Tax Return.

The Internal Revenue Service examined Mr. Starke's 2010 return.  On December 17, 2012, the IRS issued a notice of deficiency to Mr. Starke adjusting his income to include the amount from the Form 1099-MISC as nonemployee compensation and determining an accuracy-related penalty under section 6662(a).  Mr. Starke, while residing in the District of Columbia, timely petitioned.

Discussion

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[2]  Several other rules can affect the burden of production and the burden of proof.  For example, in an unreported income case such as this, the Commissioner generally must make some minimal evidentiary showing (which he has done) for the presumption of correctness to attach.[3]  And where there is a reasonable dispute with respect to an item reported on an information return, the Commissioner has the burden of producing reasonable and probative information (which he has done).[4]  Even then, the burden may shift to the Commissioner under section 7491(a) if the taxpayer introduces credible evidence regarding the issue, has

[2]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[3]See Dunne v. Commissioner, T.C. Memo. 2008-63.

[4]Sec. 6201(d).

complied with the necessary substantiation requirements, has maintained all records, and has cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews. There is insufficient information in the record to conclude that the burden should shift under section 7491(a), and Mr. Starke does not argue that the burden should shift. Accordingly, the burden remains on him. But ultimately the burden is immaterial in this case because we decide this case on the preponderance of the evidence.

Section 61 defines gross income as "all income from whatever source derived". Income can include the forgiveness of indebtedness or compensation for services.[5] In some instances, compensation can be advanced with services to be performed later. The distinction is an important one. An advance on services to be performed in the future is taxed at the time of the advance.[6] In contrast, income from the discharge of indebtedness is taxed at the time "it becomes clear that a debt will never have to be paid".[7]

Whether an amount is an advance or a loan turns on the question of whether a debtor-creditor relationship was established at the time the funds were disbursed.

---

[5]Sec. 61(a)(1), (12).

[6]Beaver v. Commissioner, 55 T.C. 85 (1970).

[7]Cozzi v. Commissioner, 88 T.C. 435, 445 (1987).

In the case of a loan, which is not included in income at the time the funds are disbursed, the parties agree that the amount will be repaid and the debtor-creditor relationship is established at the outset.[8]  However, an advance that is considered compensation for services, albeit services to be rendered in the future, constitutes taxable income in the year it is received.[9]  We determine whether a bona fide debtor-creditor relationship exists by examining all of the pertinent facts and "[a]n essential element is whether there exists a good-faith intent on the part of the recipient of the funds to make repayment and a good-faith intent on the part of the person advancing the funds to enforce repayment."[10]

Here, respondent argues the payments are advances and not loans.  We agree that the payments are not loans because we find no evidence that Mr. Starke intended to repay them at the time the payments were made.  Although Mr. Starke incurred payroll deductions by Excel, he testified that he did not know why the amounts were being deducted.  Further, there is no evidence of loan documents or any other document signed by Mr. Starke and a member of Excel memorializing a

---

[8]Commissioner v. Tufts, 461 U.S. 300, 307 (1983); Beaver v. Commissioner, 55 T.C. at 91.

[9]Beaver v. Commissioner, 55 T.C. at 91.

[10]Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970).

loan agreement. Even the 2005 letter from Excel's accountants that set forth a repayment plan makes clear that Excel and its accountants did not consider the payments to be loans, instead characterizing them as advances.

Because we agree that the payments were not loans, we would ordinarily look to whether the payments are considered advances; however, whether the payments are advances is irrelevant in this case because all of the items recorded by Excel as advances or prepaid expenses were recorded for years that are not before the Court. According to Excel's general ledgers, all of the payments were made before 2010. Because advances are taxable for the year in which they are paid, any advance would have been taxable for years that are not before us.

Therefore, respondent's adjustments based on the 2010 Form 1099-MISC, which includes amounts attributable only to potential advances, are disallowed because none of the amounts are taxable for 2010. Because of this holding, Mr. Starke is also not liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

Decision will be entered for petitioner.