OPINION. Black, Judge: We first consider the issue applicable to petitioners Al and Ethel Goodman, to wit: Whether the corporation’s “loan” of $145,000 to A1 in November 1949 and the debit balances totaling $6,913.45 in their personal accounts with the corporation at the end of 1949 represented dividends within the meaning of section 115 (a), Internal Revenue Code of 1939, and therefore were taxable to them in that year under section 22 (a) of the 1939 Code, or whether they were loans as they purported to be. Al and Ethel were, in effect, the sole stockholders of the corporation and A1 was in complete control of its operations. That this fact is not controlling, as well as the correct test to be applied in determining the instant question, was set forth by us in Carl L. White, 17 T. C. 1562, 1568 : The important fact is not petitioner’s measure of control over the company, but whether the withdrawals were in fact loans at the time they were paid out. Wiese, v. Commissioner (C. A. 8, 1938), 93 F. 2d 921, 923, certiorari denied 304 U. S. 562, rehearing denied 304 U. S. 589 (1938). The character of the withdrawals depends upon petitioner’s intent and whether he took the company’s money for permanent use in lieu of dividends or whether he was then only borrowing. Id. * * * The question, therefore, is one of fact and one which we must decide upon consideration of all the circumstances present in this particular case. Victor Shaken, 21 T. C. 785. Citation of many cases would, consequently, be of little value. As regards the $145,000 advance to Al in November 1949, we note the following: The advance was not for personal living expenses or the like, but, rather, to aid Al in a distressing circumstance. It was, for Al, an unusual, nonrecurring, emergency situation. Moreover, since Al was the “brains” of the corporation it was to .the latter’s best interest to do everything within reason to hasten his return to active management of the corporation’s affairs. The payment of Al’s tax liability, which was the purpose for which the loan was made, was regarded as, and in fact was, an important factor in reducing the time Al served in prison. The advance was formally discussed and approved at meetings of the corporation’s board of directors and stockholders. Al executed a negotiable demand note for the $145,000, bearing interest at 2y2 per cent per annum, and executed a trust instrument pledging his stock in the corporation as security for the payment of the note. Those documents and Al’s stock were delivered to the trustee named in the trust instrument. The stock pledged as security had a value in excess of twice the amount of the advance. Moreover, at all times Al had personal assets of considerable value in addition to the pledged stock which could have been resorted to to repay the loan. Shortly after Al returned from prison in March 1950, he in fact did repay $45,000 of the advance to the corporation. The major portion of the funds for that repayment was derived from a dividend which Al had received from the corporation, but such dividend was declared by the corporation on December 20, 1949, and paid to Al on December 28. Interest, although not accrued on the corporation’s books, was actually paid by Al in the amounts of $8,300 and $2,193.01 on March 28,1951, and November 19,1951, respectively. Al was ready and willing to pay the $100,000 principal balance of the note on 30 days’ notice. That balance, which was outstanding when the corporation was liquidated on March 31,1952, and the $990.35 interest accrued and unpaid at that time, were settled by adjusting journal entries in the liquidation which resulted in Al’s paying taxes, at capital gains rates, on those amounts as corporate assets distributed to him in the liquidation. The corporation consistently treated the $145,000 as a loan. It was shown as an asset of the corporation in its books, audit reports, financial statements, and State and Federal tax returns. While it is true that such bookkeeping entries by themselves are evidential only and not determinative of tax liability, the other evidence we have detailed above serves to bolster the weight that may be given those entries. Irving T. Bush, 45 B. T. A. 609, remanded on another issue (C. A. 2) 133 F. 2d 1005. We are .convinced after a careful review of all of the circumstances revealed in the record, Victor Shaken, supra, that both Al and the corporation regarded the $145,000 advance as a loan which was to be repaid. Consequently, that advance was a loan to A1 in 1949, and not a taxable dividend. See Carl L. White, supra; Irving T. Bush, supra; Herman M. Rhodes, 34 B. T. A. 212, reversed on another issue (C. A. 6) 100 F. 2d 966. We have reached the same conclusion as respects the $6,913.45 debit balances in Al’s and Ethel’s personal accounts at the close of the 1949 calendar year. A study of those accounts indicates that withdrawals were made by those petitioners from time to time but that repayments were consistently made by crediting part of their salary to those accounts. Victor Shaken, supra. The net effect of these series of transactions was a credit balance in each of their accounts as of the start of the corporation’s 1950 fiscal year (April 1,1949). We think it clear that the consistent repayments by petitioners of their withdrawals from the corporation, the last of which was a $5,000 repayment applicable to the $15,000 withdrawal for the attorney’s fee, coupled with the reflection of the balances of their personal accounts in the corporation’s financial records and tax returns, constitutes conduct indicating that the parties involved regarded the withdrawals as loans and that Al and Ethel intended to repay them. See Carl L. White, supra. A further fact supporting this interpretation of Al’s and Ethel’s intent is that they at all times had ample resources with which to satisfy any debit balances in their accounts. Comey & Johnson Co., 8 B. T. A. 52. On this state of the record we deem it of no significance that the withdrawals were not formally authorized by the directors or that no interest was charged thereon, Irving T. Bush, supra, and we hold that the debit balances totaling $6,913.45 in Al’s and Ethel’s personal accounts at the close of the 1949 calendar year represented loans to them and not withdrawals taxable as dividends. Section 102 Surtax. The final issue in this proceeding is whether the petitioner corporation is subject to tax under section 102 of the Internal Eevenue Code of 1939 [3] for its fiscal years ended March 31,1949 and 1950. Respondent determined and contends that the corporation was “availed of for the purpose of preventing the imposition of the surtax upon its shareholders,” under section 102 (a), by permitting its earnings and profits “to accumulate beyond the reasonable needs of the business,” as that phrase is used in section 102 (c). If petitioner’s earnings and profits were permitted to accumulate beyond the reasonable needs of the business then, under section 102 (c), such fact is determinative of the purpose to avoid the imposition of the surtax upon the shareholders, unless petitioner proves the contrary by a clear preponderance of the evidence. See Whitney Chain & Mfg. Co., 3 T. C. 1109, affd. (C. A. 2) 149 F. 2d 936. Whether or not petitioner permitted its earnings and profits to accumulate beyond the reasonable needs of the business and was “availed of”- for the prohibited purpose are questions of fact to be determined from all the evidence. Helvering v. National Grocery Co., 304 U. S. 282; Helvering v. Chicago Stock Yards Co., 318 U. S. 693. Consequently, “decided cases are not decisive and have comparative value only.” World Pub. Co. v. United States, 169 F. 2d 186. From its inception the corporation prospered. It began operations with a working capital of $87,900, of which $50,000 was cash. By the opening of the 1949 fiscal year its working capital had increased to $235,435.56, of which $209,203.01 was cash, and it had accumulated a surplus of $207,801.52. Its net income for that year was $89,803.78, before Federal income taxes, and $55,744.82 thereafter. Consequently, at year’s end, its working capital was $291,695.41, cash on hand was $263,648.86, and accumulated surplus was $263,606.14. We are not convinced that the petitioner corporation had any need at the end of that fiscal year ended March 31, 1949, for the further accumulation of surplus. It seems to us that its failure to distribute any part of its net profits for that year in dividends and the addition of $55,-744.82 to its already large earned surplus was accumulating its earnings and profits beyond the reasonable needs of the business. Therefore, under section 102 (c), this is determinative of the corporation’s purpose to avoid surtax upon its shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary. We do not think that the corporation by a clear preponderance of the evidence has proved to the contrary. We have endeavored to give full findings of fact on this section 102 issue and we do not deem it necessary to repeat them here. Petitioner has advanced a variety of reasons in an effort to prove that such accumulations were not beyond the reasonable' needs of its business. However, after a careful consideration of petitioner’s contentions, in light of all the circumstances involved, we have found that petitioner has failed to prove that its accumulations for the year ended March 31, 1949, were reasonably needed in its business, Latchis Theatres of Keene, Inc., 19 T. C. 1054, and that the unreasonable accumulations were to no extent, World Pub. Co. v. United States, supra, for the prohibited purpose. Helvering v. National Grocery Co., supra. We think that the situation is different for the fiscal year which ended March 31, 1950. The corporation’s net income for that fiscal year was $114,175.35. Of this amount, it paid taxes to the Federal Government of $42,830.80, it declared and paid dividends of $52,680 to its stockholders, and it retained the remainder of its earnings for that year, something less than $20,000, adding it to earned surplus. It was in this fiscal year that petitioner’s president, A1 Goodman, found himself in serious income tax difficulties, had to pay some $183,000 in income tax deficiencies and penalties, and was sent to Federal prison for his offense. There was certainly a period of uncertainty for the future of the corporation and its business at that time and when it is considered that it paid $42,380.40 to the Federal Government for taxes in that year and $52,680 in dividends to stockholders, we do not think that its addition to its surplus of the remainder of its earnings for that year, something less than $20,000, was an accumulation of its earnings beyond the reasonable needs of its business. Of course, as things turned out later, there was no apparent need for the accumulation because the ill effects of Al’s conviction for income tax evasion did not prove as serious to the business as might well have been expected. However, in passing judgment upon this section 102 issue for the fiscal year ended March 31,1950, we must take conditions as they were then and not as they proved to be later. This we have done, and we decide the section 102 issue for the fiscal year 1950 in petitioner’s favor. One of the arguments which the Commissioner strongly urges for the application of the section 102 surtax to the corporation’s fiscal year 1950 was the $145,000 loan which the corporation made to A1 in November 1949. As indicated in our discussion relative to the first issue, the $145,000 loan to A1 furthered the corporation’s best interests since Al’s early return to the business was vital. In fact, petitioner derived interest income from the loan and A1 at all times intended, and had the resources, to repay the loan. The same intent and ability to repay was present in regard to the loans to Al and Ethel on open account. None of the loans, therefore, weakened petitioner’s financial position and they were not disguised dividends. Corporate Investment Co., 40 B. T. A. 1156. We do not think that the Commissioner’s imposition of the section 102 surtax for the fiscal year ended March 31, 1950, should be sustained. We so hold. Decisions will he entered under Rule 60. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. — There shall be levied, collected, and paid for each taxable year (In addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon Its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate Instead of being divided or distributed, a surtax equal to the sum of the foUowlng: [[Image here]] (c) Evidence Determinative of Purpose. — The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.