STEVEN M. NIX AND JERI NIX, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Nix v. Commissioner
Docket Nos. 12672-78, 12673-78, 12845-78.
United States Tax Court
T.C. Memo 1982-330; 1982 Tax Ct. Memo LEXIS 418; 44 T.C.M. (CCH) 105; T.C.M. (RIA) 82330; June 14, 1982. David S. Elkouri and Patrick J. Regan, for the petitioners. Juandell D. Glass, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT *419 AND OPINION DAWSON, Judge: In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income taxes for the year 1976: Petitioners
Docket No.
Deficiency
Steven M. Nix and
Jeri Nix
12672-78
$5,325.13
Phillip E. Nix
12673-78
503.66
Loren D. Nix and
Donna L. Nix
12845-78
16,736.28
Respondent has conceded the issue relating to the recapture of investment credit under section 47 [2] in Docket Nos. 12672-78 and 12845-78, and this can be given effect in the Rule 155 computations. The only issue presented for decision is whether amounts advanced to petitioners Loren, Steven and Phillip Nix in 1976 by Nix Land & Cattle, Inc., their wholly owned and controlled corporation, constituted bona fide loans, compensation or dividends. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. All petitioners resided at Route 2, Liberal, Kansas, during 1976 and at the time they filed their respective petitions in these cases. *420 Petitioners in each docket filed timely Federal income tax returns for 1976 with the Internal Revenue Service Center at Austin, Texas. Three separate statutory notices of deficiencies were sent to the petitioners on August 9, 1978. Prior to 1976, Loren and Donna Nix were engaged in a farming operation in which they raised grain and cattle on about 1,600 acres of owned land and 1,760 acres of leased land. Their sons, Steven (Steve) and Phillip (Phil), assisted them in the farming operations. In 1976 Steve, who was then 21 years old, was married, and Phil, who was then 16 years old, was living at home and attending high school. Nix Land & Cattle, Inc. (hereinafter referred to as the corporation) was incorporated on October 6, 1975, under the laws of Kansas and began business on January 2, 1976. The corporation issued 3,760 shares of capital stock at a par value of $10 per share to the following persons who were its only stockholders: Percentage
Stockholder
No. of Shares
of Ownership
Loren Nix
2,260
60
Donna Nix
755
20
Steven Nix
560
15
Phillip Nix
115
3
Jeri Nix *
70
2
*421 The elected officers of the corporation were Loren Nix, President, Steve Nix, Vice President, and Donna Nix, Secretary-Treasurer. Loren and Donna Nix and Steve and Jeri Nix transferred certain assets and liabilities to the corporation on or about January 1, 1976, in a tax-free transfer under section 351. When the corporation began business, Byron Bird, its certified public accountant, advised the corporate officers and shareholders they should not pay salaries out of the corporation's funds because he thought that its farming operations were capital intense, thus necessitating the retention of a large amount of capital. He also thought the corporation's profitability was questionable at the beginning of its operations. In fact, the corporation later reported a tax loss of $35,978 from its farming operations for the fiscal year ended November 30, 1976. During that taxable year the corporation also reported an increase in its short-term debt of $43,650 and an increase in its long-term debt of $57,394. In that taxable year the corporation had equipment purchases of $78,123 subject to depreciation. On their joint Federal income tax return for 1976 Loren and Donna Nix reported *422 adjusted gross income of $29,386 from sources other than the corporation. Their personal living expenses during 1976 were approximately $28,500. At a stockholders' meeting on February 9, 1976, motions were made and adopted to "make loans to stockholders for 365 days at 6% interest with option to renew" and to "make loans for cattle expenses * * * to be signed jointly by Steve and Loren" on the same basis as the stockholders' loans. The corporate disbursements journal shows either "Salary Advances" or "Advance Salary" to Loren, Steve and Phil Nix for the year 1976, excluding advances for cattle expenses, as follows: Date
Loren
Steve
Phil
2-11-76
$ 1,000
$ 1,000
2-23-76
1,000
3-15-76
1,000
1,000
3-24-76
1,000
4- 1-76
1,000
1,000
4-19-76
$ 200
4-30-76
3,000
5-12-76
200
5-20-76
1,000
1,000
200
6- 1-76
1,000
6-10-76
500
1,000
2,000
6-16-76
500
6-25-76
1,000
1,000
200
7-12-76
1,000
200
7-14-76
1,000
7-30-76
200
8- 2-76
1,000
9-15-76
1,000
9-27-76
1,000
10-12-76
1,000
10-19-76
1,000
10-27-76
3,500
11- 2-76
4,500
11- 9-76
1,000
1,000
Total
$23,000
$12,000
$3,200
For each *423 advance made by the corporation to Loren, Steve or Phil, they signed promissory notes payable to the corporation for the amount advanced plus 6 percent interest. Each note was due in one year with an option to renew. Some of the notes were signed when the advances were made and some were signed later. Some of the joint notes of Loren and Steve were labeled either "Cattle Loan" or "Cattle Expense." The only advances to Loren and Steve which were recorded as "Loan to Stockholder" in the corporate disbursements journal occurred on January 31, 1977, and were for $28,000 each, and they were recorded on the note schedules as note 35 for Loren on February 1, 1977, and note 34 for Steve on the same date. Mr. Bird, petitioners' CPA, obtained copies of financial statements submitted by Loren, Steve and the corporation to the First National Bank of Liberal, Kansas, in November 1981, and those financial statements show loans by the corporation only to Loren and Steve, as follows: Financial Statements
Date
Loren
Steve
Corporation
2- 3-77
$28,000
$25,000
$56,000
1-30-78
28,000
3- 1-78
28,000
25,000
56,000
1-11-79
28,000
70,000
The corporate *424 loan records, which Donna Nix stated she prepared concurrently with the advances to Loren and Steve, show advances which substantially exceed the amounts shown on the financial statements submitted by Loren and Steve to the First National Bank of Liberal for the fiscal years ended November 30, 1977 through 1980, as follows: Cumulative Loan Amounts
Date
Loren
Steve
2- 3-77
$58,267.00
$42,767.00
3- 1-78
106,267.00
97,767.00
1-11-79
105,317.00
94,424.97
1-30-80
112,267.00
113,424.97
The note ledgers for Loren, Steve and Phil, which were maintained by Donna Nix, reflect that payments of interest and principal with respect to the advances were made as follows: Amount
Petitioner
Date
Interest
Principal
Phil
11-30-77
$576.30
Phil
11-30-78
259.76
Phil
11-30-79
$11,183.75
Steve
11-30-78
5,247.97
16,068.36
Loren
11-30-78
4,928.00
With the exception of the $576.30 paid by Phil on November 30, 1977, all payments of interest and principal were made after the notices of deficiencies were mailed by respondent. Although Loren, Steve and Phil performed services for the corporation during 1976, they did *425 not receive any amounts, except for the advances, which can be characterized as compensation or salary. The living expenses ($28,507.46) of Loren and Donna Nix for 1976 and the expenditures ($103,885.11) they made for interest, taxes and principal paid on land payments and bank notes greatly exceeded the reported income ($29,386) available to them from sources other than their advances from the corporation. However, in a financial statement submitted to the First National Bank of Liberal dated January 14, 1976, Loren declared a net worth of $791,156.23. Steve and Jeri Nix had net reported income of only $1,104 available to cover their personal living expenses and asset acquisition costs for 1976. In a financial statement submitted to the bank on November 18, 1974, Steve reported a net worth of $90,788. The agreement signed by Steve on March 5, 1979, in connection with the divorce proceeding states that he owed the corporation $74,000. His financial statement submitted to the bank on March 26, 1979, shows only $25,000 owed to the corporation. The corporate financial statement submitted to the bank on January 24, 1979, shows $35,00 owed by Steve. The note ledgers maintained *426 by Donna Nix show that in March 1979 Steve owed $95,424.97 in principal to the corporation. The minutes of the directors' meeting dated November 19, 1979, state that the corporation was to begin paying salaries to Steve and Phil as of December 1, 1979. However, the note summary schedule prepared by Mr. Bird, the CPA, from records maintained by Donna Nix, shows that Steve and Phil were paid salaries of $20,000 and $10,000, respectively, as of November 30, 1978, and salaries of $25,000 and $12,500, respectively, as of November 30, 1979. The individual note ledger for Phil, which Donna Nix maintained, shows advances to Phil of $3,200 as of November 30, 1976, and an additional $4,205 during the fiscal year ended November 30, 1977, or a total of $7,405. However, the note summary schedule prepared by Mr. Bird shows $8,005 owed by Phil to the corporation as of November 30, 1977. The corporate advances to Phil, as shown on the schedules prepared by Donna Nix and Mr. Bird, do not appear on the corporate financial statements submitted to the bank. Donna Nix classified the advances as "loans" to Loren, Steve and Phil because that was "the way that they received their income at the *427 time," but she stated that the advances were to be repaid when the corporation became profitable. The corporation filed its Federal income tax return (Form 1120) for the fiscal year ended November 30, 1976, with the Internal Revenue Service center at Austin. The return and a corporation financial statement both show the transfer of equipment having a cost of $295,676, accumulated depreciation of $141,576 and a remaining depreciable basis of $154,100. Although the Federal income tax does not show any assets in the form of inventories, the corporation financial statement shows grain under current assets with a value of $145,275. The corporation reported income from the sale of grain raised in 1976 on its Federal income tax return, but it did not claim any expense for rent or lease of farm land from petitioners because the farm land was being rented on a crop-share basis. The corporation reported on the balance sheet of its Federal income tax return for the taxable year ended November 30, 1976, that it made "Loans to Stockholders" in the total amount of $38,348.
The corporation had liquid assets in the form of grain on hand in the amount of $145,275 as of January 14, 1976, which *428 was used in part, directly or indirectly, along with funds borrowed from third parties, to make advances to Loren, Steve and Phil. The advances made to Loren, Steve and Phil were made on a regular, almost monthly, basis, usually in the same amounts. There were no restrictions on their use by the three persons, all of whom devoted their time and attention to the farming operations of the corporation. The notes executed by Loren, Steve and Phil were for one year; they were unsecured; and they were renewable at the option of the maker. They provided for the payment of 6 percent interest annually. There were no definite plans or schedules for repayment of the principal. The advances were to be repaid only if the corporate operations were profitable, and then only at the discretion of Loren, Steve and Phil. ULTIMATE FINDINGS OF FACT 1. The advances made by the corporation to Loren, Steve and Phil in 1976 do not constitute bona fide loans. 2. Loren received advances from the corporation in 1976 in the form of compensation for services of $23,000 which constitutes taxable income to him in that year. 3. Steve received advances from the corporation in 1976 in the form *429 of compensation for services of $12,000 which constitutes taxable income to him in that year. 4. Phil received advances from the corporation in 1976 in the form of compensation for services of $3,200 which constitutes taxable income to him in that year. OPINION Petitioners' wholly owned and controlled corporation made regular and periodic advances in 1976 to Loren, Steve and Phil Nix, all of whom performed services for it in its farming and ranching operations. Petitioners contend that the advances were bona fide loans. To the contrary, respondent contends that the advances constitute compensation for services rendered by the three individuals which is taxable to them under section 61(a)(1). We agree with the respondent.
Whether the advances were bona fide loans is a factual question which depends upon the existence of an intention on the stockholders' part to repay and a corresponding intention on the corporation's part to enforce the obligations. Such intent must have existed at the time the advances were made. Chism's Estate v. Commissioner,322 F.2d 956 (9th Cir. 1963), *430 affg. a Memorandum Opinion of this Court; Pierce v. Commissioner,61 T.C. 424 (1974); Haber v. Commissioner,52 T.C. 255 (1969), affd. per curiam 422 F.2d 198 (5th Cir. 1970). The courts have considered a number of factors in determining the actual intent and purpose of the parties when the advances were made. Dean v. Commissioner,57 T.C. 32, 43 (1971). It is well settled that in order to establish a valid debt the obligation to repay must be unconditional and not contingent on future events. Fairchild v. Commissioner,462 F.2d 462 (3d Cir. 1972), affg. per curiam T.C. Memo. 1970-329. A right to repayment which is contingent on a corporation's profitability or on its decision as to when its profits will allow a repayment is insufficient to establish a debt where the decision to repay rests with the person who received the advance. Jove v. Commissioner,T.C. Memo. 1975-155. An intent to satisfy or repay "loans" from future earnings of a corporation or by rendering services in the future does not satisfy the requirement for a valid debt, i.e., an unconditional obligation *431 to repay. Beaver v. Commissioner,55 T.C. 85 (1970). Certainly the petitioners' control over the corporation by virtue of their positions as stockholders and officer-directors invites special scrutiny. Haber v. Commissioner, supra. These elements of control and lack of adverse interest between the petitioners and the corporation require that we look beyond the mere form in which the advances were cast in order to insure that the formal actions taken reflect rather than disguise the true nature of the advances. Roschuni v. Commissioner,29 T.C. 1193 (1958), affd. per curiam 271 F.2d 267 (5th Cir. 1959). Although there is no precise formula for weighing and balancing the various factors which are usually considered in resolving this factual issue, we are convinced, after reviewing the evidence in this record, that the advances made by the corporation to Loren, Steve and Phil during 1976 were not bona fide loans. We think there are several factors which militate against their intent to create bona fide loans. First, we view evidence of substantial repayments of interest and principal as more persuasive of a bona *432 fide intention to repay than the formal trappings of debt obligation, such as the notes and note ledgers. While the notations thereon indicate some payments of interest by all three stockholders and repayments of principal by Steve and Phil, they are for the most part either book entries or notations made by Donna Nix, the secretary-treasurer of the corporation. Moreover, most of the interest payments and all of the repayments of principal were allegedly made in 1978 and 1979 after the audit of petitioners' returns began and after the notices of deficiencies were sent to them. Hence any such payments shed little light on their intent during the year 1976. We think they were prompted by questions raised during the course of the audit. It is also significant that substantial advances continued to be made to Loren and Steve at least through November 30, 1980. By that time the cumulative amounts were $112,267 and $113,424.97, respectively. Thus, the advances have steadily increased from year to year without any substantial payments on interest or principal. This is inconsistent with an intent to borrow and repay and, in our view, clearly supports the inference that the petitioners *433 intended to siphon off corporate earnings for their own personal use without any definite plan of reimbursement. Baird v. Commissioner,25 T.C. 387, 394 (1955). If we approved the petitioners' artificially created indebtedness, the tax savings to them would be obvious and the motive apparent. Second, both Loren and Steve regularly performed valuable services for the corporation in 1976 in the same manner they had previously performed services for the sole proprietorship operated by Loren and Donna prior to the incorporation of Nix Land & Cattle, Inc. They allegedly did so without compensation. Not only were the advances made regularly and periodically during that year, but the corporate disbursements journal also characterizes them as salary advances. Third, the "notes" were unsecured, although Loren and Steve had substantial assets which could have been used for that purpose. Cf. Al Goodman, Inc. v. Commissioner,23 T.C. 288, 301 (1954). Fourth, there were no definite plans or schedules for the repayment of the principal amounts advanced and there was no ceiling on the amounts which could be advanced. Shannon v. Commissioner,T.C. Memo. 1976-304. *434 Fifth, the repayment of the advances was contingent upon the corporation operating at a profit and deciding to pay salaries to the petitioners at some uncertain time in the future. Fairchild v. Commissioner,supra;Jove v. Commissioner, supra.
Sixth, the corporation did not in any way attempt to collect current interest or enforce the repayment of principal. Book entries were merely made at the end of the taxable year which added accumulated interest to principal. Seventh, the decision to repay was in the discretion of Loren, Steve and Phil, the persons who received the advances. Finally, there are inconsistencies and contradictions in the testimony and documentary evidence submitted herein. In some instances we have found them irreconcilable. It was incumbent on petitioners to establish by a preponderance of the evidence that the advances in question were loans. In our judgment this burden has not been carried, and our ultimate findings of fact so reflect. [3]
*435 Petitioners contend, in the alternative, that if the advances are not found by the Court to be bona fide loans, they should be characterized as constructive dividends rather than compensation.We reject this contention for several reasons: (1) the corporation had no earnings and profits out of which dividends could have been paid in 1976; (2) the advances were not made in proportion to stockholdings; (3) two of the stockholders did not participate in the advances; and (4) the advances had, in form and in substance, all of the earmarks of compensation for services rendered to the corporation. To reflect the concession by the respondent and our conclusions on the disputed issues, Decisions will be entered under Rule 155.
Footnotes
1. Consolidated herewith are the cases of Phillip E. Nix, docket No. 12673-78; and Loren D. Nix and Donna L. Nix, docket No. 12845-78.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
*. In February or March 1979 the shares of Jeri Nix were assigned to Steve pursuant to a divorce settlement agreement.↩
3. Respondent has requested findings that Loren and Steve also received taxable income of $2,720.69 each for advances of "cattle expenses." We have made no findings with respect to such expenses because no adjustments are contained in the notices of deficiencies and respondent has not claimed increased deficiencies under section 6214(a) or filed a motion to conform pleadings to proof. Moreover, it appears that adjusting entries were made to the corporate books which treated the total cattle expense of $ 5,441 as a deduction on the corporate income tax return.↩