# United States Tax Court

T.C. Memo. 2023-22

LUNDY NATH AND TANYA NATH,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket Nos. 6783-18, 18050-19.                    Filed February 27, 2023.

————————

Lundy Nath and Tanya Nath, pro sese.

*Erik W. Nelson, Kimberly L. Clark, Catherine J. Caballero, Janice B. Geier*, and *Kelley A. Blaine, for respondent.*

## MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, *Judge*: The Commissioner determined additional income for the Naths for 2014 and 2016 (years in issue) by performing a bank deposits analysis. Most of the deposits originated with Mr. Nath's Cambodian family business, Grand Lion Group Co., Ltd. (GLG), which Mr. Nath controlled. Mr. Nath contends that these transfers were loans to him from GLG, but he also testified that they were advances on future earnings intended to fund his lifestyle. Advances on future income are taxed when received, and the transfers to Mr. Nath were, in fact, taxable advances.

## FINDINGS OF FACT

Married petitioners Lundy and Tanya Nath received income from GLG, a Cambodian construction company that specializes in building hotels. Mr. Nath and his father are the sole, equal owners of GLG. Mr. Nath also performs services for GLG such as project oversight and contractor selection.

**Served 02/27/23**

**[\*2]** During 2014 and 2016, GLG borrowed money from Cambodian banks to conduct its general operations. Mr. Nath wired money from GLG to himself in the United States to pay his family's living expenses. He transferred approximately $1.5 million in 2014 and $450,000 in 2016. The ultimate decision to transfer the money did not require approval from anyone other than Mr. Nath and his father.

The Naths timely filed returns for 2014 and 2016 on which they reported total tax liabilities of $20,761 and $29,772, respectively. Notably, they did not report the wire transfers they received from Cambodia during 2014 and 2016 as income on the return for either of those years.

Most of the income they reported for both years was on Schedule C, Profit or Loss From Business. They also claimed deductions for various Schedule C expenses, including meals and entertainment, airfare, and hotels. Their reported expenses totaled $93,008 for 2014 and $236,297 for 2016. They reported that Mr. Nath's Schedule C business was "consulting."

## I.  *Examination*

The Commissioner examined the 2014 and 2016 returns. During the examination, the Naths failed to produce books and records from which to determine their income and expenses, so the Commissioner computed their income using a bank deposits analysis. Through the bank deposits analysis, the Commissioner uncovered unreported deposits, most of which were wire transfers from Cambodia.

The Commissioner determined unreported income on the basis of deposits and disallowed expense deductions on the basis of lack of substantiation. The Commissioner also determined that a section 6662 accuracy-related penalty applied for each year in issue.[1] The examiner who made the initial determination to assert penalties obtained written approval for each penalty from his group manager before that penalty was communicated to the Naths in an examination report attached to Letter 5153 or Letter 950, or in a notice of deficiency.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[\*3]** II.    *Notices of Deficiency*

The Commissioner mailed a notice of deficiency for 2014 on January 12, 2018. On the basis of the unreported deposits from Cambodia, the Commissioner determined additional income (ordinary dividends) of $1,530,687. Additionally, the Commissioner disallowed all Schedule C expense deductions and determined a section 6662 penalty for either a substantial understatement of income tax or negligence.

The Commissioner mailed a notice of deficiency for 2016 on July 1, 2019. On the basis of the unreported deposits, the Commissioner determined additional income (gross receipts) of $327,475. Additionally, the Commissioner disallowed all Schedule C expense deductions and determined a section 6662 penalty for either a substantial understatement of income tax or negligence.

III.    *Petitions for Redetermination*

While residing in California, the Naths filed Petitions for redetermination. In those Petitions, they challenge the notices of deficiency in their entirety. The following amounts are in dispute:

| Tax Year | Deficiency | I.R.C. § 6662 |
|----------|-----------|---------------|
| 2014 | $682,984 | $136,597 |
| 2016 | 217,651 | 43,530 |

IV.    *Tax Court Proceeding*

The evidentiary record in these cases is sparse. After repeated continuances, we tried these cases on October 24, 2022. The Naths provided little documentary evidence to support their cases. Mr. Nath appeared and called only himself as a witness. He did not provide any evidence about the expenses he reported on Schedules C.

Mr. Nath's evidence regarding the wire transfers from Cambodia was unreliable and often conflicting. He testified that he was borrowing money from GLG and that the transfers represented advances of income from GLG. At times, he referred to the advances as a salary—for example, he testified that "the incoming wires that I sent over to my personal bank account here in California . . . [were] to take care of the family. . . . I took some of my salaries to help pay for my expenses here." And at other times, he referred to the advances as part loan, part salary.

[*4] He offered various unreliable trial exhibits. Two exhibits purported to be loan agreements between Mr. Nath and GLG for loans made in 2014 and 2016. Mr. Nath signed the agreements both on his own behalf as the borrower and on behalf of GLG as the lender. Neither agreement is dated. They are identical except for the loan amounts and effective dates. Both provide that the "loan shall be repayable on 31 December 2024" but that Mr. Nath "may, at his option, choose to repay part or all of the loan prior to [that] date." They require him to pay interest "at a rate of 8% per annum" within 14 business days of receiving an annual invoice from GLG. Mr. Nath testified that he made monthly (not annual) payments, but he did not provide any documents evidencing those payments.

OPINION

In these cases, we are asked to redetermine (1) the amounts of unreported income for 2014 and 2016 that the Commissioner determined on the basis of a bank deposits analysis, (2) the amounts of Schedule C expenses, and (3) the applicability of section 6662 penalties. The Naths do not dispute the total amount of deposits, but they contend that most of them are nontaxable loans from GLG. They also contend that the Commissioner's disallowance of expense deductions and determination of penalties were erroneous.

I.      *Burden of Proof*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In the Court of Appeals for the Ninth Circuit, to which these cases would be appealable, determinations of unreported income must be supported by a "minimal evidentiary foundation" before the presumption of correctness applies. *Weimerskirch v. Commissioner*, 596 F.2d 358, 361 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977); *see Golsen v. Commissioner*, 54 T.C. 742, 756–58 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). "[T]he Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity." *Weimerskirch v. Commissioner*, 596 F.2d at 360. In *Weimerskirch*, the Commissioner relied on a "naked assertion" and did not attempt to substantiate the unreported income through "other means, such as . . . bank deposits." *Id.* at 362.

**[\*5]**    Here, the Commissioner determined unreported income on the basis of bank deposits, which are prima facie evidence of income. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). The record reveals that these deposits stem from GLG, which the Naths do not dispute. The Commissioner's determinations are presumptively correct, and the record does not support shifting the burden back to the Commissioner. *See* I.R.C. § 7491(a).

II.    *Unreported Income*

"[G]ross income means all income from whatever source derived," including compensation for services such as wages and salaries, gross income derived from business, and dividends, among others. I.R.C. § 61(a); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429–31 (1955); *see Durland v. Commissioner*, T.C. Memo. 2016-133, at \*61. Taxpayers must maintain books and records sufficient to establish their income and expenses. I.R.C. § 6001; Treas. Reg. § 1.6001-1(a). If they fail to do so, the Commissioner may reconstruct income through any reasonable method that clearly reflects income. I.R.C. § 446(b); *Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989). We have long accepted the bank deposits method for this purpose. *Clayton v. Commissioner*, 102 T.C. 632, 645–46 (1994). The bank deposits method assumes all deposits are taxable, but the Commissioner must account for any nontaxable source or deductible expense of which he has knowledge. *Id.* Taxpayers bear the burden of proving a nontaxable source for deposits. *Barnes v. Commissioner*, T.C. Memo. 2016-212, at \*32–34, *aff'd*, 773 F. App'x 205 (5th Cir. 2019).

The Naths argue that most of the deposits are not taxable because they are proceeds from a loan from GLG to Mr. Nath. A loan is not taxable income when received because the taxpayer has an obligation to repay it. *Commissioner v. Tufts*, 461 U.S. 300, 307 (1983). By comparison, an advance for future services is taxable in the year it is received. *Beaver v. Commissioner*, 55 T.C. 85, 91 (1970). Whether an advance is a bona fide loan is a question of fact that turns on whether the borrower and lender intended to make and enforce monetary repayment at the time the advance was made. *Id.* To answer this question, we consider various objective factors that are indicative of subjective intent. *See Haag v. Commissioner*, 88 T.C. 604, 616 n.6 (1987), *aff'd without published opinion*, 855 F.2d 855 (8th Cir. 1988). Where, as in these cases, Mr. Nath sits on both sides of the advances, special scrutiny is warranted. *See Nix v. Commissioner*, T.C. Memo. 1982-330, 44 T.C.M. (CCH) 105, 109.

**[*6]** We find no evidence that the Naths intended to repay the advances at the time they were made, so they were not loans. The loan agreements are unenlightening as to intent at the time the advances were made because they do not indicate when Mr. Nath executed them. There was no meaningful oversight of GLG's decisions to make the advances. Mr. Nath gave no collateral; and because he approved the purported loan to himself on behalf of GLG, there were no real adverse interests between the lender and the borrower. We find it unlikely that Mr. Nath or his father would enforce monetary repayment if Mr. Nath could not satisfy the obligation through his services or otherwise. Further, Mr. Nath's intent to satisfy the advances through future services or future income from GLG disqualifies them from being bona fide debt. *See Beaver*, 55 T.C. at 91. Finally, other than Mr. Nath's testimony, which we do not find credible, there is no evidence that he made any repayments.

The advances were not loans, and the Naths have failed to otherwise establish a nontaxable source for the unreported deposits. Thus, they have failed to meet their burden, and we uphold the Commissioner's determinations.

III.  *Expenses*

Taxpayers bear the burden of proving that they are entitled to claimed deductions. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). That burden requires substantiation. *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001). Taxpayers must maintain records sufficient to establish the amount of each deduction. *Rogers v. Commissioner*, T.C. Memo. 2014-141, at *17; Treas. Reg. § 1.6001-1(a), (e).

The Naths failed to put on evidence of their expenses at trial, so they failed to meet their burden. *See Miller v. Commissioner*, T.C. Memo. 2014-105, at *12–13.

IV.  *Section 6662 Penalties*

The Commissioner determined a section 6662(a) accuracy-related penalty for each year in issue. Section 6662(a) provides that a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax required to be reported on a return that is attributable to, among other things, negligence or disregard of the rules or regulations or a substantial understatement of income tax. *See* I.R.C. § 6662(b)(1) and (2). The Commissioner determined penalties based on substantial

[*7] understatements and alternative penalties based on negligence for both years in issue. Only one section 6662 accuracy-related penalty may be imposed with respect to a given portion of an underpayment. Treas. Reg. § 1.6662-2(c); *see Mileham*, T.C. Memo. 2017-168, at *46.

Under section 7491(c), the Commissioner bears the burden of production with respect to penalties and must produce evidence that any penalty is appropriate. *See Higbee*, 116 T.C. at 446. Because section 6751(b) requires managerial approval of section 6662 penalties, under our precedent the Commissioner's burden of production includes establishing compliance with section 6751(b). *Walquist v. Commissioner*, 152 T.C. 61, 68 (2019). Once the Commissioner meets his burden, the Naths must come forward with persuasive evidence that the Commissioner's determination is incorrect or that an exception applies. *Higbee*, 116 T.C. at 446–47; *see* I.R.C. § 6664(c)(1) (reasonable cause and good faith exception).

A.  *Penalty Approval*

Section 6751(b)(1) provides that no penalty shall be assessed unless the initial determination to assert penalties is approved (in writing) by the immediate supervisor of the person who made that determination. This Court has held that an "initial determination" occurs the earlier of when the Commissioner issues a notice of deficiency or otherwise formally communicates a decision to determine penalties. *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020); *Clay v. Commissioner*, 152 T.C. 223, 248–49 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021). However, the Ninth Circuit arguably applies a different standard as to timing. *See Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020). In *Laidlaw's*, which involved an assessable penalty that was not subject to deficiency procedures, the Ninth Circuit held that approval can occur after formal communication to the taxpayer, so long as it occurs before assessment.[2] *Id.* at 1074.

Approval was timely in these cases. The initial determination to impose each penalty was approved before it was communicated to the Naths in a notice of deficiency or an examination report, so the Commissioner satisfied section 6751(b) both as interpreted by this Court

---

[2] Neither our Court nor the Ninth Circuit has addressed whether the rationale of *Laidlaw's* extends to penalties that are subject to deficiency procedures, such as section 6662 penalties. We need not reach that question in these cases.

**[\*8]** and under the standard established by the Ninth Circuit (to the extent, if any, it is applicable here).

### B.   *Substantial Understatement*

Section 6662(d)(1)(A) defines a substantial understatement of income tax as an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. The Naths' understatements of income tax for 2014 and 2016 are substantial because they exceed $5,000 and are greater than 10% of the amount required to be shown on their returns.

### C.   *Negligence*

"'Negligence' . . . includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Treas. Reg. § 1.6662-3(b)(1). The record shows that the Naths were negligent because they failed to keep adequate books and records to substantiate reported expenses. *See Mileham*, T.C. Memo. 2017-168, at \*46.

### D.   *Conclusion as to Penalty*

The Commissioner met his burden of production as to penalties, and the Naths failed to put on evidence that the Commissioner's determinations were erroneous or that the reasonable cause and good faith exception of section 6664(c)(1) applies. Thus, they failed to meet their burden of proof, and are liable for section 6662 accuracy-related penalties.

## V.   *Conclusion*

The Naths failed to demonstrate any error in the Commissioner's notices of deficiency for 2014 and 2016. To reflect the foregoing,

*Decisions will be entered for respondent.*