T.C. Summary Opinion 2007-133

UNITED STATES TAX COURT

NANCY L. AND GERALD L. HARPER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17561-05S.                Filed July 30, 2007.

Nancy L. Harper and Gerald L. Harper, pro sese.

Vicki L. Miller, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for the year 2003 of $421. The issues for decision are whether petitioners failed to report nonemployee compensation of $1,125 on their 2003 Federal income tax return, whether petitioners are liable for self-employment tax on that amount, and whether petitioners are entitled to a corresponding deduction for one-half of the self-employment tax to be paid.

## Background

The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time the petition was filed, petitioners resided in Paola, Kansas.

Petitioner wife (Mrs. Harper) worked as an independent insurance agent selling life and mortgage refinancing insurance policies with Primerica Financial Services, Inc. (Primerica) from February 25, 2002, through July 18, 2003. Until her affiliation with Primerica, Mrs. Harper had no prior experience as an insurance agent.

During the course of its affiliation with Mrs. Harper, Primerica paid her cash in two forms. First, upon receipt of an application for insurance, Primerica would advance Mrs. Harper a portion of the commissions that were expected to become earned, assuming that a policy would be issued and remain in force for 1

year. The second form of payment was in the form of net earned commissions. These earned commissions were calculated on a policy-by-policy basis as premiums were paid by policyholders. Earned commissions were applied in the following order: (1) To recover outstanding debits in the form of advance commissions; (2) to reimburse Primerica for advanced business expenses such as license fees, etc.; and (3) to cover any outstanding amounts that had been charged to a sales representative's account (Chargeback Recovery). Primerica would report any net earned commissions credited during the taxable year to a sales representative's account to the IRS on Form 1099-MISC, Miscellaneous Income.

Upon selling an insurance policy, Mrs. Harper received an immediate advance equal to a percentage of the premiums due on the policy and was entitled to keep this amount if, and only if, the policy was held by the insured for 1 year. These advances were not reported to the IRS as income until the 1-year mark elapsed, and Mrs. Harper had an unconditional right to the funds or their equivalent.

Primerica recorded monthly commission account statements for Mrs. Harper for each month of 2003. Consistent with the dates of her affiliation with Primerica, the last monthly statement showing policy sales was dated July 31, 2003. The final monthly summary is dated December 31, 2003, and reports the following:

### Tax Reporting Summary

#### Year to Date

| | |
|---|---|
| Personal sales | $990.85 |
| Base shop override | 122.28 |
| ICA/Escrow contribution | (95.94) |
| ICA/Escrow used/released | 95.98 |
| Gross earned commissions | 1113.17 |
| Imputed interest | 12.76 |
| Total reportable income | 1125.93 |

#### Accounting Activity Summary

| | |
|---|---|
| Advance recovery balance | (723.89) |
| Chargeback recovery balance | (334.88) |
| Business expenses | (55.00) |
| Other adjustments | (95.98) |
| Intercompany recovery | 158.70 |
| Previous earns owed | (62.12) |
| Total | (1,113.17) |

Primerica issued two Forms 1099-MISC to Mrs. Harper for the taxable year 2003; the first reflecting nonemployee compensation in the amount of $1,125.93 ($1,113.17 in Gross Earned Commissions and $12.76 in Imputed Interest) and the second, reflecting nonemployee compensation in the amount of $158.70 (Intercompany Recovery). Although respondent has not raised the latter amount, $158.70, as an issue in this case, as detailed above, this amount was applied to Mrs. Harper's outstanding commission account balance.

Petitioners did not report either amount reflected on the aforementioned Forms 1099-MISC on their 2003 income tax return. Mrs. Harper did, however, attach a letter to petitioners' 2003 return in which she contested the inclusion of these amounts in

petitioners' 2003 gross income on the grounds that they never received any payments ("checks") from Primerica during the year at issue, and because she ended her affiliation with Primerica "in late 2002," the monthly figures for 2003 submitted to her and respondent by Primerica had to have been falsified.

## Discussion

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). As the issue in this case is legal, that is, whether income generated by petitioner wife's commission account is includable in petitioners' gross income, we decide this case without consideration of the burden of proof. Sec. 7491.

The first issue presented in this case is whether Mrs. Harper earned income based on commissions that were not paid directly to her "in a check" but, rather, were diverted or applied to offset a negative balance in her commission account.

Section 61(a)(1) provides that gross income includes "all income from whatever source derived, including (but not limited to) * * * Compensation for services, including fees, commissions, fringe benefits, and similar items", unless otherwise provided. The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of

Congress to tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Moreover, section 1.61-2(a)(1), Income Tax Regs., provides that "Wages, salaries, commissions paid salesmen, * * *, commissions on insurance premiums, * * * are income to the recipients unless excluded by law."

In the context of insurance agents who receive advances based on future commission income, whether those advances constitute income depends on whether, at the time of the making of the payment, the agent had unfettered use of the funds and whether there was a bona fide obligation on the part of the agent to make repayment. Dennis v. Commissioner, T.C. Memo. 1997-275. In many instances, repayment is simply made out of future earned commissions. Where the repayments will be taken only from future commissions earned, and the agent will not become personally liable in the event that the future income does not cover the repayment schedule, the payments will constitute income to the agent for each year to the extent he received them. Moorman v. Commissioner, 26 T.C. 666, 673-674 (1956). These payments are nothing more than disguised salary. Beaver v. Commissioner, 55 T.C. 85, 91-92 (1970). However, in the situation where the advances are actually loans, when the repayments are offset directly by the future earned commissions, then the agent will have either commission income or cancellation of indebtedness

income at the time of the offsets.  Cox v. Commissioner, T.C. Memo. 1996-241; cf. Warden v. Commissioner, T.C. Memo. 1988-165.

In this case, Mrs. Harper continued to earn commissions on policies that she had sold during her affiliation with Primerica through August of 2003.  However, instead of paying these commissions to Mrs. Harper "by check", Primerica diverted the commissions to accounts showing balances owed by Mrs. Harper for the advances and expenses payments previously described.  We believe that based on all of the evidence presented, that when Primerica previously made advances to Mrs. Harper, she was not taxed on those advances because the advances were loans secured and payable through future earned commissions.  Beaver v. Commissioner, supra; Diers v. Commissioner, T.C. Memo. 2003-229.

Although the record before us is devoid of any contract that may have existed between Mrs. Harper and Primerica, we are convinced from our review of the detailed monthly statements of accounting maintained by Primerica, and illustrated at Exhibit 5-J, that under the system that Primerica used to account for its agents' commissions, advances Primerica paid to Mrs. Harper were actually loans to be offset directly by future earned income.

As evidence for this conclusion, we point to the fact that Mrs. Harper carried over a negative balance in her commission account from 2002 and had a negative balance in her chargeback recovery account for each month of 2003.  For each month of 2003,

Primerica would apply Mrs. Harper's accumulated earnings for that month to her negative balance. This process was repeated through November of 2003, when Primerica applied the remaining amount of Mrs. Harper's earnings to zero out her commission account. At the end of 2003, Mrs. Harper's commission account (including recovery of advances made and chargeback amounts owed) had a negative yearend balance of ($1,113.17). The monthly records show that Primerica applied $1,113.17 from Mrs. Harper's earnings recorded throughout that year to essentially pay back the negative balance in her account.

We believe, despite the lack of any contract stating otherwise, that this accounting shows that Mrs. Harper was under an obligation according to her affiliation with Primerica to rectify any outstanding balance in her commission account and, to that end, her advances were not taxed upon receipt, but her actual earnings were taxed. In this case, those earnings were used to pay back a deficit accumulated in her commission account.

At the end of 2003, Mrs. Harper's commission account was credited with $1,113.17. Primerica, however, did not pay Mrs. Harper this amount by check but rather applied it to a then-existing deficiency in her commission account. Before applying the funds, Mrs. Harper's commission account had a total negative balance of ($1,271.87). After crediting the account with $158.70 in "institutional recovery" and applying the $1,137.17 credit

from earnings to Mrs. Harper's commission account, the result was that her existing account deficiency was eliminated, and her obligation to pay back this amount was settled.  This reduction, referred to in income tax parlance as cancellation of indebtedness, resulted in Mrs. Harper's receipt of gross income irrespective of the fact that, in her words, "she never received an actual check for $1,113.17."  Diers v. Commissioner, supra.

At trial, petitioners stated that they refused to include the amounts as listed on the aforementioned Form 1099 on their return as they had not received any check for that amount from Primerica during 2003.  While we are sympathetic to petitioners' confusion as to why they must include in their gross income moneys that they actually did not "get a check for," our review of the entire record in this case, including the copious statements of tax and accounting submitted by respondent as a result of a subpoena served on Primerica, show that the amount in issue was, in fact, applied to a then-existing deficiency in Mrs. Harper's chargeback account and when received was, based on the reasons previously discussed, taxable.

This conclusion also comports with the explanation provided in a letter sent by Primerica to respondent that is included as part of the record.  In that letter, Primerica explained that, "In Mrs. Harper's case, since income was applied to both negative

advance recovery and chargeback recovery balances, a check was not issued to the agent."

Based on the foregoing, and under the relevant tax law, Mrs. Harper would have had cancellation of indebtedness income at the time that monthly premiums were reclassified as earned income and/or any preexisting deficiency in her commission account was offset. See Diers v. Commissioner, supra; Cox v. Commissioner, T.C. Memo. 1996-241; cf. Warden v. Commissioner, T.C. Memo. 1988-165. Therefore, the Court holds that petitioners received commission income in the amount of $1,125.93 in 2003.

Petitioners also contest inclusion of the amounts listed on the Form 1099 at issue on the grounds that Mrs. Harper had stopped selling policies for Primerica sometime in the fall of 2002, and, accordingly, she could not have made any sales from which commissions could be generated in 2003. Petitioners testified that despite their repeated requests to Primerica regarding the exact circumstances by which the figures reflected in the 2003 monthly statements were derived, they had not been able to ascertain the exact nature of these amounts.

Based on the entire record before us, we are not convinced either that Mrs. Harper ended her affiliation with Primerica in November of 2002, or that (assuming that she did not actually sell any policies in 2003) Primerica did not account for policies that she sold in 2002 on its 2003 monthly reports. First, Mrs.

Harper could not provide the Court with an exact date on which she terminated her affiliation with Primerica. She testified that she told her regional director in person that she "was quitting" sometime in November of 2002. Mrs. Harper claimed that she had not put her intentions in writing to Primerica or any of its employees at any time because "it was her regional director's responsibility to do that." Second, Mrs. Harper confirmed at trial the figures contained in the records provided by Primerica showing that she received commissions on policy sales in December 2002. Since Mrs. Harper also testified that she had sold her last policy in September 2002, we conclude that it was possible that Primerica did not make the initial advances to its agents, including Mrs. Harper, until several months after the date on which the policy was actually sold.

Finally, because agents were required to repay advanced amounts if policies were terminated before a 1-year period elapsed, it is possible, assuming that the last contract sold by Mrs. Harper was received by Primerica in December 2002, that there would be activity on her commission account through the end of 2003. All of these reasons lead us to the reasonable conclusion that Mrs. Harper could have been credited commissions in taxable year 2003 for policies sold in that year, as well as policies sold in 2002.

The last issues before us concern whether petitioners are liable for the self-employment tax and whether petitioners are entitled to a corresponding deduction for one-half of the self-employment tax to be paid.

Section 1401(a) imposes a tax upon the self-employment income of every individual. In general, self-employment income consists of the net earnings derived from an individual (other than a nonresident alien) from a trade or business carried on by such an individual. Sec. 1402(a) and (b); sec. 1.1401-1(c), Income Tax Regs. An individual is subject to self-employment tax if his or her net earnings from self-employment exceed $400 for the taxable year. Sec. 1402(b)(2).

In this case, although petitioners dispute that Mrs. Harper was an independent insurance agent with Primerica during the taxable year in issue, they do not disagree that Mrs. Harper was at one time an agent for Primerica.[1] Moreover, and based on our foregoing discussion, we believe that the income received by Mrs. Harper in 2003 was derived directly from her work as an independent insurance agent with Primerica, either in 2002 or 2003. Accordingly, the Court holds that Mrs. Harper earned income in 2003, and is, therefore, both liable for self-

---

[1] We note that no argument or evidence was presented as to whether Mrs. Harper was an employee or statutory employee under sec. 3121(d).

employment tax on that income and entitled to a corresponding deduction for one-half of the self-employment tax to be paid.

Accordingly, and based on the foregoing facts and discussion, we hold that petitioners failed to report nonemployee compensation in the amount of $1,125 on their 2003 Federal income tax return, are liable for self-employment tax on that amount, and are entitled to a corresponding deduction for one-half of the self-employment tax to be paid.

Decision will be entered

for respondent.